**FARMER, ADMX., Plaintiff-Appellee, v. PITTSBURGH, CINCINNATI CHICAGO & ST. LOUIS RAILWAY COMPANY, ET, Defendants-Appellants.**

Ohio Appeals, Second District, Darke County.

No. 651.   Decided December 11, 1947.

322

L. E. Kirlin, Greenville, for plaintiff-appellee.

Baird Broomhall, Troy, and Messrs. Goubeaux & Goubeaux, Greenville; for defendants-appellants.

**OPINION**

By HORNBECK, J.:

The appeal is on questions of law from a judgment of the Common Pleas Court for the plaintiff in the sum of $2975.00 and costs.

The cause was tried to Judge and jury. At the conclusion of the plaintiff's case, during the presentation of which the defendant offered the testimony of witnesses out of order by agreement, the defendant moved for a directed verdict and renewed the motion at the conclusion of the whole case. Motion for judgment notwithstanding the verdict, and motion for new trial, were filed, heard and overruled and judgment entered on the verdict.

Three errors are assigned here, two of which are:

First. The refusal of the Court to direct a verdict for the defendant on its motion;

Second: The refusal of the Court to enter judgment notwithstandindg the verdict on motion and in overruling the motion for new trial.

Plaintiff's decedent, William H. Farmer, was on the morning of December 18, 1945, operating a milk truck and driving it in a westwardly direction on the West Manchester-New Paris Highway. When he reached the intersection of the highway with a railway crossing, owned by the defendant, the P. C. C. & St. L. Railway Company, he was struck by a locomotive, operated by defendant, the Pennsylvania Railway Company, moving in a southwestwardly direction. It develops that the defendant, the P. C. C. & St. L. Railway Company maintains and owns the right-of-way at the crossing and that the defendant, Pennsylvania Railway Company, operates the trains along and over said crossing. We hereinafter refer to these

defendants without differentiation as "defendants". The truck with the body of Mr. Farmer in it, was impaled on the locomotive, burst into flames and was carried a distance from one-half to three-quarters of a mile before the locomotive and some fifteen to seventeen cars, constituting the train, were brought to a stop. The road, as it approaches the crossing from the east, and the railroad to the northeast, make a rather sharp angle and at a distance of about one thousand feet the tracks of the railroad curve to the north. It was claimed that the train was being operated negligently at an excessive rate of speed; that warning, either by bell or whistle, was not seasonably given Mr. Farmer as the train approached the crossing; that because of obstruction to the northeast, caused by growth of brush and trees, and because of the curve in the railway, the view of one approaching the crossing from the east would be impaired; that there were inadequate signs and precautions for the safety of the travelling public, and particularly plaintiff's decedent, at the crossing; that the plaintiff, as he approached the crossing, stopped his truck before entering the right-of-way of defendant company, looked and listened for any train that might be approaching, and that he could not see or hear the approach of the train; that after taking due precautions, plaintiff's decedent started his motor truck in an effort to pass over the crossing, but was unable to do so and was struck and killed; and finally, it is averred that after the employees on the locomotive of defendant saw Mr. Farmer on the track at the crossing and in peril, and after it had time within which to stop its locomotive, failed and neglected to make any effort to prevent injury to him.

Upon the issues drawn the cause went to trial. The plaintiff, among other witnesses, offered Mr. Floyd Spitler, Deputy Sheriff of Preble County, Mr. George W. Flory, the Coroner of Preble County, Mr. Martin M. Miller, through whose farm defendant's railway runs, and Mr. H. D. Armstrong, the fireman on the locomotive which struck Mr. Farmer. At the conclusion of plaintiff's case and at the end of the whole case, defendants moved for directed verdict upon four grounds; namely, (1) failure to prove any negligent act on the part of the defendant companies to be the proximate cause of the death of plaintiff's decedent; (2 and 3) that the evidence as a matter of law disclosed that plaintiff's decedent was chargeable with contributory negligence; (4) for other reasons apparent on the record.

To appreciate the questions presented, it will be necessary to set forth, as briefly as possible, the testimony of some of the witnesses, particularly for the plaintiff. Mr. Spitler, as

Deputy Sheriff, testified to the report of the Sheriff as to the collision and Mr. Flory, the Coroner, testified to the report which he made as Coroner. They were permitted over the objection of defendants to testify to statements made to them by the fireman as to certain details of the accident. Mr. Miller was also interrogated respecting statements made by the fireman which he heard on the same subject matter. If this testimony was in conflict in any material fact with the testimony of Mr. Armstrong, the fireman, we would be faced with the necessity of determining whether or not these statements were admissible as a part of the res gestae, and there would indeed be serious doubt if any of them could properly be so received.

Manifestly, the Deputy Sheriff and the Coroner were notified after the collision and did not come on to the scene of the accident until they had travelled some distance, all of which took considerable time. Could it be said that the statements of the fireman then made to them were anything more than a recounting of past events?

Mr. Miller was the first person on to the scene after the collision, but he lived 400 feet from the crossing and the train had moved a distance of from one-half to three-quarters of a mile before it came to a stop, all of which distance he had to traverse before coming to the locomotive and after the engineer had left to call the Coroner, Mr. Miller was in the cab with the fireman and it was then that the statements to which he testified were made. No objection was interposed to this testimony of Mr. Miller. If the statements of the fireman, as made to Mr. Miller, were in conflict with anything to which he testified, even so, such statements would not be substantive proof of the subject matter of the statement. Its only effect would be to weaken or detract from conflicting statements thereafter made on the stand by the fireman.

An examination of the following cases is of value in determining whether or not the testimony of these witnesses was competent as a part of the res gestae. **The Liberty Highway Company v Callahan, 24 Oh Ap 374;** Wade v State, 20 O. C. C. (n. s.) 189, and the late case in this district, **Lyle v Olentangy Corporation, 47 Abs. 359.** We do not, however, find it necessary to hold that the testimony of these witnesses on the subject matter under consideration was incompetent.

The plaintiff was put to the necessity of, or at least did, offer Mr. Armstrong, the fireman, as her witness after the court had refused to permit him to testify as upon cross-examination. Upon Mr. Armstrong's testimony, it appears that he was on the look-out as he turned the curve, a distance of about eleven hundred feet from the crossing; that when the

locomotive was some six hundred feet therefrom he saw Mr. Farmer drive slowly up to the crossing; that when the locomotive was about two hundred feet from the crossing Mr. Farmer drove up to within about six feet of the tracks and stopped his truck and thereafter, when the locomotive was within a hundred to a hundred and fifty feet from the truck, it started up and drove onto the track; that before Mr. Farmer was seen the first time, the engineer, who did not and could not see the truck because on the opposite side of the locomotive, was blowing the whistle which he had begun to do at a distance of a quarter of a mile from the crossing, and continued to blow it until after the truck was struck; and when the fireman discovered that the decedent would, in probability, be struck he called to the engineer to whistle and he then gave three sharp blasts; that the bell on the locomotive had been ringing continuously from the time the train left Dayton until after the collision.

Further, the witness said that in the distance between Mr. Farmer and his truck and the locomotive when he drove on to the track, namely, a hundred to a hundred and fifty feet, it was impossible to stop or materially lessen the speed of the locomotive. Thus, it is manifest that upon the testimony of Mr. Armstrong, there is no issue of fact whatever upon which the jury could pass. If, however, upon testimony of the other witnesses for the plaintiff, which is favorable to the plaintiff, a conflict arises, then the jury should be given the opportunity to resolve the conflict. **Pope, Administratrix v Mudge, et al., 108 Oh St 192.** Upon the closest study of plaintiff's witnesses, we find no conflict whatever with the testimony of Mr. Armstrong upon any material issue of last clear chance.

Mr. Spitler, the Deputy Sheriff, testifying from his report at page 16, said:

"Mr. Armstrong (the fireman) said that he saw the truck stop and then it started to cross the track. He told the engineer to blow the whistle."

Mr. Flory, at page 22 of the record, said:

A. "The fireman told me that the truck stopped and then started again. That is according to my notes."

Q. "Did he make any statment as to how far he was away when he saw that truck start up to make that crossing after it had been brought to a stop?"

A. "No, don't remember that he did."

And on cross-examination, he reiterated his statements on direct.

. Mr. Miller, at page 30 and 31 of the record:

Q. "I will ask you whether or not you talked to the fireman at that time?

A. Yes, I was up in the cab after the engineer went to call the coroner at the neighbors, I was up in the cab with the fireman and he told me that he saw the man drive up and stop and then he said that they was coming around the bend when they saw him when he drove up and stopped, why then it just started on,—

"Mr. Broomhall: You said that he started what?

A. Crept right up on the track with the truck.

Q. He said that at the time that he seen him the engine was back about the curve there some place, didn't he?

A. Yes, he said it was coming just around the curve when they saw him stop."

Page 36:

Q. "I want to ask you, Mr. Miller, at the time you talked to the fireman of that train did he say what, if anything, either he or the engineer did after they saw this man start the truck up and he told the engineer that they,—that he thought they was going to hit him? Did he say anything?

A. Yes, he said just as soon as they come around the curve there and saw him stop and start on, why he looked over to the engineer and he said, we are going to hit him."

Mr. Paul Royer was, by consent of counsel, called as a witness for the defendants before the plaintiff had concluded her case. At page 54 of the record on his direct examination—

"Q. Well, I will ask you, Mr. Royer, if you talked with the engineer or fireman yourself down there immediately after this crash?

A. No. I don't know that I just talked to them myself. I was around there when they were talking.

Q. Well, I will ask you if you heard that fireman say he saw Mr. Farmer bring his truck to a stop and then started on again when they was several hundred feet away from the crossing?

A. I heard him say that."

No objection was offered to this testimony. Later, same page:

"Q. Did he say anything,—did you hear him make any statement as to what either he or the engineer did after they saw that Mr. Farmer was in danger and liable to be hit?

A. I know they started stopping as soon as they hit; you could hear them throw off their steam.

Q. But you didn't hear them throw on the steam until after they hit, did you?

A. Well, of course, you would that quick; you wouldn't think nothing about it. I wouldn't know.

Q. Did the fireman say anything as to whether the engineer attempted to stop the train before they got to that crossing after he told him that they fellow was going to get hit?

A. I didn't hear anything about that, I don't think. I didn't get that question clear.

QUESTION READ AGAIN.

A. Heard him say that he told him that he stopped; that he had got stopped when he asked him if he got stopped, but then he pulled up on the track after that, I reckon.

, *  *  *  *

A. I don't know as the fireman said that they was going to hit him that I even heard."

Page 57:

"Q. You did hear him (the fireman) say that he saw him stop and start up again?

A. I didn't hear him say that he started back up. I heard him say he said he seen him stop."

This answer clears up the ambiguity in the answer heretofore quoted to the second question at page 54. The testimony of Mr. Royer, of course, may not be considered upon the motion for directed verdict at the conclusion of plaintiff's case because, offered before the plaintiff had rested, it is a part only of defendant's case and should be so considered.

Upon a full consideration of all of the testimony relating to the averment of the Last Clear Chance Doctrine in the petition, there is no support for the claim of plaintiff because there is no contradiction of the statements of the fireman

as to the occurrences immediately prior to and attending the collision and upon which reasonable minds could differ. **Hamden Lodge, I. O. O. F. v Ohio Fuel Gas Company, 127 Oh St 469.**

We give some consideration to the other principal issues in the case, namely, the negligence of the defendant companies and the contributory negligence of plaintiff's decedent.

It is said that the crossing where the collision occurred ■ was dangerous, and that there were inadequate warnings there. But this could not particularly affect Mr. Farmer who had regularly, for four or five weeks prior to the collision, traveled over this crossing and was thoroughly familiar not only with the fact that there were railroad tracks there, but the general physical situation attending. Nor would the failure of the company to place additional warnings, barriers or protection at the crossing relieve Mr. Farmer from his obligation to exercise due care.

There is some testimony that there were trees that would be in the line of Mr. Farmer's vision as he approached the crossing and also that the railroad track made a curve to the north at a distance of approximately 1000 feet, but there is not a scintilla of evidence from which any inference can be drawn that Mr. Farmer's view was materially impaired if he stopped six feet from the crossing, and this is the place where under the competent testimony it must be said, he stopped. At this point he could see the locomotive for a distance of at least 1000 feet.

There is likewise some testimony, negative in character, ■ to the effect that no whistle was blown until a very short time before the collision. But the failure to sound warnings could not absolve plaintiff's decedent from the obligation to use his senses, particularly of sight, at a time when such looking would be seasonable. That he was contributorily negligent must be found as a matter of law under the case of **The Columbus, Delaware & Marion Electric Co. v O'Day, Admx., 123 Oh St, 638.** There an interrogatory was submitted to the jury the answer to which established the fact that plaintiff's decedent, the driver of the automobile in which he was riding when struck, had he looked, would have seen the interurban car in time to stop his automobile in a place of safety and also that he did not look in the direction of the oncoming car when he was far enough from the railroad track to stop his automobile before reaching the crossing. Like answers must be made to such interrogatories if presented in this case.

There is no escape from the conclusion that without respect to any negligence which may have been established

against the defendant company, which is very meager indeed on this record, it conclusively, and as a matter of law, appears that plaintiff's decedent was chargeable with contributory negligence which would have precluded any recovery on the part of the plaintiff upon all averments of the petition save only that of last clear chance.

We have heretofore discussed the factual development on last clear chance. **West v Gillette, 95 Oh St 305; Ross v Hocking Valley Ry. Co., 40 Oh Ap 447; Cleveland Ry. Co. v Masterson, 126 Oh St 42,** all announce the law of last clear chance in Ohio. As we have heretofore said upon the evidence before the jury upon this question, it must be resolved against the plaintiff because it does not appear, nor can it be inferred, that anything the engineer could have done after he discovered the peril of the plaintiff's decedent, could have prevented the collision.

It follows then that the motions of the defendant, particularly for directed verdict at the conclusion of all of the evidence, and for judgment non obstante veredicto should have been sustained, as well as the motion for a new trial.

The third assignment is directed to the general charge. We find the instructions of the court, as embodied in the charge, complete and correct and if the facts adduced had warranted their submission to the jury, its members would have had proper instructions as to the law controlling their deliberations.

The judgment will be reversed and judgment entered in this court for the defendant.

WISEMAN, PJ, and MILLER, J, concur.