HUERTA *v.* VAN CLEVE ET AL.

(No. CI-85-027 — Decided
October 4, 1985.)

Court of Common Pleas of
Paulding County.

*Rice, Plassman, Rupp & Hensal* and
*Peter D. Short,* for plaintiff.

*Gallagher, Milliken & Stelzer* and
*John C. Milliken,* for defendants.

HITCHCOCK, J. Plaintiff requests summary judgment finding defendant Clay Etta Van Cleve liable for personal injury caused by her negligence in respect to an auto-motorcycle collision in this county. From the pleadings and depositions on file it appears that there is no dispute as to these facts.

On June 9, 1984, shortly before 1:00 p.m., Clay Etta was, with permission, driving the 1971 Oldsmobile owned by her husband, defendant Jerry L. Van Cleve, on State Route 111. She was going west and approaching the location where S.R. 111 intersects at right angles State Route 637. At this point traffic on S.R. 637 has the right of way and stop signs on S.R. 111 face traffic proceeding in either an easterly or westerly direction. In obedience to the stop sign, she brought her vehicle to a complete stop and took a drink from some container she had. It was a clear, hot, sunny day. The road was dry, the land surface level, and visibility clear in all directions for a substantial fraction of a mile.

While defendant Clay Etta was doing this, plaintiff, Joe G. Huerta, was riding his 1983 Honda Shadow 750 motorcycle and going south on S.R. 637. Although he then had a valid Texas operator's license, it bore no endorsement entitling him to operate a motorcycle. It required him to wear prescription eyeglasses. He was traveling in the right half of the roadway at a speed very near 55 m.p.h. (he is sure that it was right at 50-55 m.p.h.) and he may have slowed a bit because of the intersection. He saw defendant stop and thought "* * * it's obvious they seen me for sure because they made a complete stop."

But defendant did not see plaintiff and drove her automobile west through the intersection. Plaintiff saw defendant's automobile proceed into his lane of traffic. Plaintiff, without contradiction, says that "I just slammed on the brakes and just slid," although no skid

marks are in evidence. The parties agree that while defendant's right rear wheel was somewhere in the west half of S.R. 637, plaintiff's motorcycle struck that wheel thereby stopping the forward movement of the motorcycle and throwing plaintiff from it. Plaintiff says he suffered various injuries including injury to certain of his vertebrae.

Although defendant pleads contributory negligence and says of plaintiff's conduct on the occasion: "He could have went around the rearend of my car," no genuine issue of fact is raised by defendant as required by Civ. R. 56(E) from which any contributory negligence can be inferred.

After the event defendant was successfully prosecuted for failure to yield and plaintiff was successfully prosecuted for failing to have a motorcycle endorsement. There is, however, no showing that this latter fact had any relationship to the proximate cause of plaintiff's injury.

With the enactment of R.C. 2315.19, effective June 20, 1980, Ohio adopted the law of comparative negligence in those cases where defendant's negligence is equal to or greater than that of a plaintiff seeking recovery when the negligence of both contributed to proximately cause the plaintiff's injury. Consequently, this court concludes that the court can, in considering a plaintiff's motion for summary judgment, based upon appropriate evidence, reach either of three conclusions, to wit:

(a) Genuine issues of fact for trial exist requiring the overruling of the motion;

(b) Reasonable minds must conclude that defendant was at least fifty percent negligent as a matter of law in causing the accident and rendering partial summary judgment to such effect but requiring trial to evaluate concurrent contributing negligence; or

(c) That reasonable minds must conclude from the facts shown in the record that defendant is negligent and that plaintiff is free from negligence, and that defendant, consequently, is liable for all injury proximately caused plaintiff under the circumstances shown.

The court finds that situation (c) above is, from the facts shown without dispute, applicable here and reasons as follows:

As defendant's negligence in failing to yield is clearly shown, we need only consider if, under the circumstances, plaintiff might be found chargeable with "contributory negligence" for any failure to exercise ordinary care for himself or others. This court finds that reasonable minds, in light of the facts shown without dispute, must conclude that plaintiff was free from negligence.

Defendant makes no allegation that plaintiff was driving at a speed greater than reasonable and proper or exceeding 55 m.p.h., a speed prima facie, but not conclusively, unlawful. Nor does anything in the physical evidence indicate plaintiff was at the time of the collision chargeable with traveling at any speed greater than reasonable and proper under the circumstances.

The court first makes reference to 10 Proof of Facts (1961), where proof of "Skidmarks and Stopping Distances" is discussed and reference is made to statistics found in the Appendix thereto. In Figure 23, and Table 3 thereof, statistics compiled by Lumberman's Mutual Casualty Company show "Stopping Distances of Good Brakes on Good Pavement."

This table shows that most cars (motorcycles equated with light weight automobiles) traveling on good pavement at 50 m.p.h. require 183 feet in which to stop, and at 60 m.p.h. require 251 feet, after the driver's perception of danger. In this speed range a driver moves at least 55 feet (.75 second) while reacting to apply the brakes and needs at least 128 feet at a decreasing speed to come to a complete stop. If there is deceleration from 73.33 feet per second (at

50 m.p.h.) at a constantly decreasing rate until the vehicle stops, a total of about 3.5 seconds is required from the time danger is perceived until the vehicle stops if there is nothing obstructing the course of the vehicle's forward movement. Here the collision occurred in the course of the plaintiff's stopping which would be near the mid-point of the 128 feet following the 55 feet needed to apply the brakes, or at a point nearly 119 feet after plaintiff perceived danger if traveling at 50 m.p.h. at that time. Were he traveling as much at 60 m.p.h. — and there is no evidence to indicate such speed or that even so under the circumstances such was greater than reasonable and proper — when he perceived danger, he would in the .75 second needed to react travel 66 feet to enable him to apply the brakes, and would need 185 feet in which to come to an unobstructed stop. Again it is clear that adding 66 and 92.5 (one-half of 185) plaintiff would have gone about 158.5 feet at the time of the collision traveling at such speed. Further in traveling from the application of his brakes to a stop without obstruction he would require:

[See table at bottom of page.]

Obviously once the brakes are applied another .75 second is required for a follow-up reaction for the purpose of executing any avoidance manuever if we weigh no surprise factor in this situation and could assume plaintiff was a skilled Hollywood stunt man prepared for such event. Further, because of the deceleration it is obvious that one half the deceleration time will measure much less than one half deceleration distance. Clearly the typical automobile in crossing a 40-foot highway utilizes from 2.5 to 5.0 seconds for the maneuver.

This data based upon the natural laws of physics of which the court takes judicial notice, when evaluated in light of the admitted facts, reveals plaintiff's collision must have occurred before or during the fraction of a second needed for the body to react a second time for the purpose of taking action to avoid the collision. Under these circumstances, reasonable minds must conclude that plaintiff cannot be legitimately charged with any lack of ordinary care because he had no time in which to exercise such care to avoid this collision.

Nor can the doctrine of "last clear chance" have any application to the facts of this case although Ohio has long recognized it. Typically, the doctrine is only invoked where negligent conduct, not concurrent, is involved and it is applied only in those situations where one negligently permits himself to be placed in a position of peril and is actually observed by another who is able, but who fails, to act as to avoid injury to the one first perceived to be in a perilous position so that the failure to exercise ordinary care last in time is the proximate cause of the injury. See *Pflugh* v. *United States* (W.D.Pa. 1956), 138 F. Supp. 470 [60 O.O. 461]; *Farmer* v. *Pittsburgh C.C. & St. Louis Ry.* (1947), 83 Ohio App. 321 [38 O.O. 396]; *Higgs* v. *N.Y. Cent. RR.* (1937), 57 Ohio App. 367

At 50 m.p.h.:

|  |  |
|---|---|
| 0.75 | second for brake application |
| 3.49 | seconds to travel the extra 128 feet if unobstructed |
| 4.24 | seconds for a complete stop after danger is perceived. |

At 60 m.p.h.:

|  |  |
|---|---|
| 0.75 | second for brake application |
| 4.19 | seconds to travel extra 185 feet if unobstructed |
| 4.94 | seconds for a complete stop after danger is perceived. |

[11 O.O. 67], and *Cleveland Ry. Co.* v. *Masterson* (1932), 126 Ohio St. 42.

Plaintiff here is not shown to have become imperiled by any lack of ordinary care for his own safety, but clearly defendant was negligent *per se* in failing to observe plaintiff and to yield the right of way to which he was entitled. There is no allegation of fact here raising any genuine issue that plaintiff knew of defendant's negligence (which placed both in peril) in time to have avoided the collision by the exercise of ordinary care. Consequently, reasonable minds must find plaintiff free from negligence.

It then follows that defendant driver of the automobile, must, as a matter of law, be found liable for any injury defendant proximately caused plaintiff on June 9, 1984.

*Judgment for plaintiff.*