HAMILTON FOUNDRY & MACHINE CO.
v. INTERNATIONAL MOLDERS & FOUN-
DRY WORKERS UNION OF NORTH
AMERICA et al.

No. 11349.

United States Court of Appeals
Sixth Circuit.

Decided Dec. 11, 1951.

As Amended on Denial of Rehearing
Jan. 23, 1952.

J. Mack Swigert, Robt. T. Keeler, Cincinnati, Ohio, on the brief, for appellant.

Robert A. Wilson, Cincinnati, Ohio, Long & Bloom, Bert H. Long and Milton M. Bloom, all of Cincinnati, Ohio, on the brief, for appellees.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, The Hamilton Foundry and Machine Company, brought this action against the appellee labor organizations under the provisions of Section 301 of the Labor Management Relations Act of 1947, Title 29, U.S.C.A. § 185, for damages caused by an alleged breach of a no-strike provision in a contract between the appellant and the appellees. Following a jury trial and a verdict for $37,500, in favor of the appellant, the District Judge sustained motions of the appellees for judgment notwithstanding the verdict. This appeal followed the entry of such judgments.

Appellant operates a gray iron jobbing foundry at Hamilton, Ohio. The appellees, International Molders & Foundry Workers Union of North America, (A.F.L.) and Local No. 68 International Molders & Foundry Workers Union of North America, (A.F.L.) are labor organizations within the meaning of the Act. Certain employees of the appellant working in the molding, core making, and core assembly departments and in two miscellaneous job classifications were members of Local No. 68, the membership of which also included employees in other companies in Hamilton, Butler County, Ohio.

The complaint alleged that on or about March 26, 1949, the appellees negotiated a contract with the appellant with respect to wages, hours and other conditions of employment, effective March 28, 1949, and to continue in effect until March 27, 1950; that Section VII of the contract provided—"A. During the Life of this Agreement, the Union agrees that it will not cause or permit any of its members to cause or take part in any strikes, stoppage or slowing down of work, and the Company agrees that there shall be no lockouts"; and that on April 4, 1949, in violation of the no-strike agreement the appellees permitted their members employed by the appellant to take part in a strike at the appellant's foundry in Hamilton, Ohio, which made it impossible for the appellant to operate its foundry, with a resulting loss to the appellant in the sum of $75,500 with additional damage in the amount of $3,000 for each working day that the strike continued thereafter.

Thereafter, following motions by appellees, the appellant filed a More Definite Statement of Claim which stated that the contract was negotiated orally between a committee representing the Local and the

International Union and representatives of the Company, which was then reduced to writing and presented to members of the Union, following which the appellant was notified verbally by the appellees that the contract was approved, but that the appellees thereafter refused to sign the contract. This pleading stated—"The termination date of said contract was midnight March 26, 1950." There was attached and made a part of the pleading a copy of the alleged unsigned contract, which was later introduced in evidence as Exhibit 3. Appellees denied the making of the contract with the appellant and also pleaded affirmatively, as one of several affirmative defenses, that no action could be brought upon the alleged contract under the Ohio Statute of Frauds, Sec. 8621, Ohio General Code, in that the contract was not in writing and could not be performed within one year from the making thereof. After the start of the trial, the appellant filed an "Amended More Definite Statement of Claim" which stated that the terms of the contract were set forth partially in a written proposal presented by the Company to the representatives of the Unions, and partially in oral statements made by the Company to representatives of the Unions; that the full terms contained in the alleged contract were set forth in the attached exhibit with certain specified changes; that none of the provisions of the contract was conditional on the signing of a written agreement; and that said contract was entered into on March 26, 1949 effective March 28, 1949 and that its termination date was midnight March 26, 1950.

The evidence at the trial showed the following: The 1948 agreement between the Company and Local No. 68 was executed on February 24, 1948, effective March 1, 1948, and was to continue in effect until February 28, 1949 and for each succeeding year thereafter unless either party gave sixty days written notice previous to the expiration date. By letter of December 13, 1948, serving as the official 60-day notice in the matter, the Company was notified that it was the desire of Local No. 68 to open negotiations on changes in the agreement. The parties entered into collective bargaining negotiations in February 1949. Five meetings were held between the Company and a committee representing Local No. 68. The real issue in dispute was the Company's insistence that Local No. 68 accept its proposal that a so-called Industrial Engineering Method of computing the piece work wage rates of the employees engaged in production molding be put into effect in the foundry, which the employees refused to accept. Local · No. 68 applied for a strike sanction from the International Union which was granted. At a meeting on March 3, the Company presented a draft of a proposed contract, which was introduced as Exhibit 19. This was not accepted by the employees. At a meeting on March 17, the Company modified the proposal by making an offer of one week's retroactivity. This was not acceptable to the employees, although the Company was notified at the time that the parties were not far apart. At a meeting on Thursday March 24, the same proposal was discussed with the modification of a change in the percentage for the core roll over machine operator, together with two weeks' retroactivity instead of one. This was to be effective Monday March 28th. At the close of this meeting, the Union representatives advised the Company that they would present the amended proposal to a meeting of the members employed by the Company to be held on Friday night March 25th and that a Union representative would notify the Company on Saturday morning March 26th whether the proposal had been accepted or rejected.

The evidence about what occurred at the meeting on March 25th and what notification the Union representative gave to the Company in a telephone call on Saturday morning March 26th is conflicting. McDaniel, a Vice President of the Company, testified that McCune, a Union representative, advised him that the Company's offer had been accepted. McCune testified that he told McDaniel that the employees voted not to put the strike sanction into effect, and that the employees would begin to work under the proposed plan on Monday, March

28th, and that if it proved to be fair without a cut in wages, the agreement could be signed on Wednesday.

The Company immediately began correcting the piece work price tags in order that the workers would have them when they started to work on Monday morning. The men returned to work on Monday morning and started work under the new contract rates. The new rates proved unsatisfactory, in some instances resulting in a reduction in the daily pay. At the regular weekly meeting of Local No. 68 on Monday night, the committee reported to the Union the action taken at the meeting on Friday night. The Local approved of the plan of continuing at work for awhile instead of striking, and rejected the Company's proposal. Negotiations were continued during the following week. On April 2, 1949, the employees voted to strike. The strike began Monday, April 4, 1949.

At the close of appellant's case, the appellees moved for a directed verdict. The motions were overruled. At the close of all the evidence, the appellees renewed their motions for a directed verdict. The motions were again overruled, and the case was submitted to the jury following instructions by the Court. The jury returned a verdict against both appellees in the amount of $37,500. The appellees filed motions for judgment notwithstanding the verdict in accordance with their motions for a directed verdict, and in the alternative also moved for a new trial without specification of any grounds therefor. The District Judge sustained the motions for judgment notwithstanding the verdict and entered judgments for the defendants. The judgments also stated that the motions for a new trial were well taken on the grounds assigned in the motions for a directed verdict, that the appellant had failed to sustain the burden of proof, and "that in the event of a reversal of the final judgment rendered herein * * * said verdict for the plaintiff is set aside and a new trial granted."

In entering said judgments, the District Judge filed Findings of Fact and Conclusions of Law, in which he found that the action of the employees at the Friday night meeting at its best represented the action of appellant's employees who were members of the Union and did not represent the official action of Local No. 68, a necessary party to the contract; that the correct version of what actually took place at the Friday night meeting was a vote "to not invoke the strike sanction"; that both parties fully intended that neither would be bound unless and until the agreement was signed, and since Local No. 68 did not sign the agreement, no valid contract was entered into between the parties.

 Appellant complains of the action of the trial judge in making such Findings of Fact, in that Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A., providing for such Findings does not authorize them when a case has been tried with a jury, and that in ruling on a motion for judgment notwithstanding the verdict the trial court is not permitted to weigh the evidence or find the facts. We agree with this contention, and accordingly do not apply to the Court's Findings of Fact the established rule that they are to be accepted unless found to be clearly erroneous. They will be considered on this appeal as merely indicating to the Court the reasons of the trial judge for making the ruling herein complained of. In reviewing the ruling, we will apply the established rule that upon a motion of a defendant for a directed verdict the trial judge should overrule the motion unless, viewing the evidence in the light most favorable to the plaintiff, there would be no substantial evidence to support a jury verdict if returned for him. Hinton v. Dixie Ohio Express Co., 6 Cir., 188 F.2d 121; O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 183 F.2d 733, 739; Tennant v. Peoria & P. U. R. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 177 F.2d 53.

 We also agree with appellant's contention that a contract may be validly entered into even though the written instrument evidencing the terms of said contract has not been executed by the parties. Although the general rule is settled that an unsigned contract can not be enforced by either of the parties, however completely it

may express their mutual agreement, if it was also agreed that the contract should not be binding until signed by both of them, it is also a recognized exception that if the party sought to be charged intended to close a contract prior to the formal signing of a written draft, and such written draft is viewed by the parties merely as a convenient record of their previous contract, he will be bound by the contract actually made though the signing of the written draft be omitted. American Bentonite Corp. v. Clark Equipment Co., 6 Cir., 43 F. 2d 392, affirmed 6 Cir., 43 F.2d 1023; Restatement, Contracts, Sec. 26. It is essentially a question of intention. The evidence was conflicting on this factual issue. The testimony of McDaniel and Rentschler to the effect that it was agreed that the contract was to be in effect upon oral notification that it had been accepted, and that the signing would follow later, was sufficient to take this issue to the jury. The trial court was not justified in making the finding that the parties fully intended that neither would be bound unless and until they signed the agreement.

■ We do not agree with appellees' contention that the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq., requires the collective bargaining agreement to be reduced to writing and signed in order to be valid. The Act does not so state. In H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 and Cox v. Gatliff Coal Co., D.C., 59 F. Supp. 882, affirmed 6 Cir., 152 F.2d 52, it was stated that the Act contemplated that a collective bargaining agreement be in writing. Since those decisions, the Act has been amended by the Labor Management Relations Act of 1947, by which collective bargaining was defined as including "the execution of a written contract incorporating any agreement reached if requested by either party". Section 158(d), Title 29 U.S.C.A. In our opinion, this contemplates valid oral agreements where neither party requests a written instrument. N. L. R. B. v. Scientific Nutrition Corp., 9 Cir., 180 F.2d 447, 449; United Shoe Workers v. Le Danne Footwear, D.C.Mass., 83 F.Supp. 714.

■ Nor do we agree with appellees' contention that the District Court lacked jurisdiction because the alleged cause of action, not being based on diversity of citizenship, did not arise under any law of the United States. Article III, Sec. 2, U. S. Constitution. Treating the contract as one recognized by the Act, even though an oral one, the cause of action upon it arises out of a law of the United States. A. F. L. v. Western Union Telegraph Co., 6 Cir., 179 F.2d 535, 538. The "no-strike" clause in the agreement does not impair any constitutional right of the employees and does not defeat the jurisdiction of the National Labor Relations Board. Shirley-Herman Co. v. International Hod Carriers, Etc., 2 Cir., 182 F.2d 806, 809, 17 A.L.R.2d 609.

■ We also agree with appellant's contention that the trial judge erred in making the finding that the correct version of what actually took place at the Friday night meeting was to not invoke the strike sanction, in that there was substantial evidence to show that the employees voted to accept the Company's proposal. Three witnesses, Bicknell, Sherman and Johnson, testified for the appellant that the Company's proposal was voted on and accepted by the employees at this meeting. Other witnesses testified that there was much confusion, that "Everything blew up," and that no such vote was taken. This presented a factual issue for submission to the jury, whose verdict in that respect should have been accepted.

■ However, if the District Judge was correct in his ruling that the action of the employees at the Friday night meeting at its best represented the action of appellant's employees who were members of Local No. 68, and did not represent the official action of the Union, the judgment must be affirmed. We agree with the ruling. It is undisputed that the Friday night meeting was not a meeting of the Union, but was only a meeting of the employees of the appellant who were members of the Union; that the Union membership included employees of six or seven other plants in that area; that the chairman of the meeting was an employee of the Company rather than the President of Local No. 68; and that

there was no consideration of the Company's proposition by the entire Union membership until the regular weekly meeting of the Union on Monday night March 28th, at which time it was rejected. The written proposal names Local No. 68 as the other party to the contract. It is a fundamental rule of contracts that a contract, in order to be binding on a party thereto, must be accepted by such party. It seems clear that Local No. 68 did not, by any action of its own, accept the contract. We do not find the necessary evidentiary basis to support the contention that the committee of employees who negotiated with the Company, or the officers of the International assisting the committee, had any authority to bind Local No. 68 to such a contract prior to its approval by the Local itself, or represented to the Company that they had such authority. We recognize the logic of the proposition that Local No. 68 would in all probability accept the contract if approved by the employees of the Company, but the probability of such action does not dispense with its necessity. Appellant contends that the strike was put into effect by vote of the employees of the Company on April 2, without a meeting of the Local, and that the meeting on March 25th was equally as binding on the Union. The fact that the employees of the Company voted to strike and did so, does not mean they had authority from the Union to do so or that such action bound the Union. The argument may work more against the appellant than for it. If Local No. 68 did not call or authorize the strike, Local No. 68 is not liable for breach of the alleged contract. We think it is more consistent with legal principles, and in fact necessary to keep appellant in court, to consider the strike action as having been ratified by the Union's silence or failure to repudiate it. Gold Mining Co. v. National Bank, 96 U.S. 640, 644, 24 L.Ed. 648; Leviten v. Bickley, Mandeville & Wimple, 2 Cir., 35 F.2d 825. In the present case, Local No. 68 promptly rejected any "acceptance" of the contract by the Company's employees. Nor do we consider it material that employees of the Company called for and cashed their pay checks for the work performed on Monday. They were entitled to pay for the work performed on that day at the rate in effect for that day, whether a contract for a longer period was in effect or not. Again, it was the action of individuals, not the action of the Union.

The District Judge did not rule upon the defense of the Ohio Statute of Frauds, although it was raised by the pleadings. It is strongly pressed by appellees on this appeal, and will be considered in that in our opinion it furnishes another ground for the affirmance of the judgment. In re Barlum Realty Co., 6 Cir., 154 F.2d 562, 566. Although the contract and federal jurisdiction to enforce it arise out of a federal statute, the enforcement of the right must conform to the remedy prescribed by the law of the state where the action is brought. We agree with appellant that a state statute can not change or diminish a substantive right created by a federal statute, as was the case in Hill v. Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 and Shirley-Herman v. International Hod-Carriers Union, 2 Cir., 182 F.2d 806, and similar cases, but a state statute is applicable where it deals with the remedy rather than with the substantive right. Campbell v. City of Haverhill, 155 U.S. 610, 618, 15 S.Ct. 217, 39 L.Ed. 280; Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 51 L.Ed. 241; Cope v. Anderson, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602; Republic Pictures Corp. v. Kappler, 8 Cir., 151 F.2d 543, 162 A.L.R. 228. The Ohio Statute of Frauds affects the remedy only. Heaton v. Eldridge, 56 Ohio St. 87, 46 N.E. 638, 36 L.R.A. 817; Ohlendiek v. Schuler, 6 Cir., 30 F.2d 5; Continental Collieries v. Shober, 3 Cir., 130 F.2d 631, 633–634. See also Hamilton v. Glassell, 5 Cir., 57 F.2d 1032; Straesser-Arnold Co. v. Franklin Sugar Refining Co., 7 Cir., 8 F.2d 601, certiorari denied 270 U.S. 642, 46 S.Ct. 208, 70 L.Ed. 776.

Section 8621, Ohio General Code, provides that no action shall be brought "upon an agreement that is not to be performed within one year from the making thereof" unless it is in writing and signed by the party to be charged. Appellant's pleadings and evidence provide much confusion about the length of time covered by the alleged contract involved in this case.

The original complaint alleges that the contract was negotiated "on or about March 26, 1949 * * * to be in effect * * * until March 27, 1950." Apparently realizing that this allegation might be vulnerable to the defense of the Statute of Frauds, it filed a More Definite Statement of Claim, which alleged that the contract was entered into on March 26, 1949, effective March 28, 1949, and terminated at midnight March 26, 1950. Such a contract would not be covered by the Statute of Frauds since the date of execution is not included in the computation. Restatement, Contracts, Sec. 198(d); State v. Elson, 77 Ohio S. 489, 495–496, 83 N.E. 904, 15 L.R.A.,N.S., 686; Nickerson v. President and Fellows of Harvard College, 298 Mass. 484, 11 N.E.2d 444, 114 A.L.R. 414. It filed with this amendment Exhibit 3, alleging it to be a copy of the contract entered into. Exhibit 3, however, provided that the contract was to be effective March 28, 1949 and "continue in effect until March 27, 1950 and for each succeeding year thereafter," subject to modification upon renewal. Appellant's first witness testified that Exhibit 3 was the contract agreed upon. In addition to there being no evidence about a contract with a termination date of midnight March 26, 1950, the exhibit contradicted the allegations of the Amended Complaint and was controlling. Rule 10(c), Rules of Civil Procedure; Simmons v. Peavy-Welsh Lumber Co., 5 Cir., 113 F.2d 812, certiorari denied 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442; American Surety Co. v. Federal Reserve Bank, D.C.Mo., 29 F.Supp. 940; Kessler v. Grasser, 300 Ky. 89, 187 S.W.2d 1012. After the first witness, appellant's evidence was to the effect that Exhibit 19, with certain oral modifications, was the written proposal submitted by it to the Union and agreed to on March 26th. This exhibit provided that it was effective March 14, 1949 and would "continue in effect until March 13, 1950 and for each succeeding year thereafter," subject to modification upon renewal. Some contention is made that since the contract terminated by March 13, 1950, as stated in Exhibit 19, it was not covered by the statute. But obviously Exhibit 19 was not the agreement of the parties insofar as the beginning and termination

dates were concerned, even assuming some agreement was made. It was a draft of a proposed agreement submitted to the Union on March 3rd, rejected by the Union at that time, resubmitted with some modification on March 17th and again rejected, and again used as a basis for negotiations at the meeting on March 24th without taking the trouble to change the dates contained therein, although both parties understood that they were outmoded and not applicable to the current negotiations. This is conclusively shown by the testimony, after appellant's first witness, that Exhibit 3 was drafted *after* the meeting of March 25th and represented what the appellant thought was agreed to by use of Exhibit 19 with oral modifications. Accordingly, we rule as a matter of law that Exhibit 3 controls the termination date of the contract. Rules 10(c) and 15(b), Rules of Civil Procedure.

Appellant contends that the words "until March 27, 1950" as used in Exhibit 3 are words of exclusion with the result that the contract terminated at midnight March 26th. The general rule appears to be that the word "until" is usually a term of exclusion, but will be treated as a word of inclusion if such was the intention of the parties. Kendall v. Kingsley, 120 Mass. 94; Houghwout v. Boisaubin, 18 N.J.Eq. 315; Rogers v. Cherokee Iron & R. W. Co., 70 Ga. 717. In the present case, both the past history of annual agreements between the parties and the current negotiations show the clear intent of the parties to make collective bargaining agreements of a year's duration, not for a day less than a year. The 1948 agreement, which ran until February 28, 1949, provided that it was to continue in effect for each succeeding year thereafter, unless modified upon renewal. Both Exhibits 3 and 19 contain the words "and for each succeeding year thereafter." We hold that the duration of the contract included March 27, 1950 and since, if made at all, it was made on March 26th, it was not to be performed within a year from the making thereof.

In view of the above rulings, it becomes unnecessary to review that portion of the judgments granting appellees a new trial in the event the judgments should be reversed.

So much of the judgments as sustains appellees' motions for judgment notwithstanding the verdict and enters judgments for them is affirmed.