George DICKERSON, Plaintiff-Appellant,

v.

SHEPARD WARNER ELEVATOR CO., Defendant-Appellee.

No. 14166.

United States Court of Appeals Sixth Circuit.

Feb. 24, 1961.

Hyman Rosen, Cincinnati, Ohio (Rosen & Rosen, and Joseph E. Rosen, Cincinnati, Ohio, on the brief), for appellant.

Milton M. Bloom, Cincinnati, Ohio, for appellee.

Before MILLER, WEICK and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This cause was tried in the District Court for the Southern District of Ohio. Plaintiff-appellant George Dickerson takes this appeal from a judgment entered on a verdict directed for defendant-appellee Shepard Warner Elevator Company at the close of all the evidence. The district judge held that there was not sufficient evidence of negligence of defendant to submit the issue to the jury.

On July 16, 1957, Dickerson, an elevator operator at the Cincinnati Club in Cincinnati, Ohio, while there operating an elevator, was crushed between the elevator and a fire door when the elevator ascended suddenly as he attempted to open the fire door which was the entrance to the subbasement level of the club.

The car which Dickerson operated was equipped with a safety feature sometimes called a "dead man's control." The elevator control handle, when released by the operator, was to return automatically to the off position, thereby causing the elevator to stop and remain stopped. Dickerson testified that on the day of the accident he stopped his elevator at the basement level of the club and took on a passenger, Gussie Fitch, a bus girl at the club. She directed him to the subbasement level. Dickerson took his elevator down and when he reached the subbasement, stopped his machine level with the floor. The elevator control handle, he relates, "was setting right on the center," that is, in the neutral or off position.

At the subbasement level of the club there is a recess with a lintel or shelf about eighteen inches wide between the elevator and the fire door which leads to the subbasement. In order to open this door it is necessary to extend one's arm into this space. The door was heavy enough to require the use of two hands to open it. Dickerson testified he placed his left hand against the door to brace himself. With his right hand he reached for the door latch. His forward foot did not extend into the recess, but was at the edge of the elevator. As he grasped the door latch, the elevator ascended suddenly, throwing Dickerson into the recess. On its way up, the elevator caught his foot and dragged him, between the elevator and the recess lintel, up to the basement level. The elevator continued its ascent to the first floor at which time Gussie Fitch stopped it by manually moving the control handle to the center or off position.

The witness Fitch testified that when the elevator was at the subbasement level she observed plaintiff take both hands from the control handle and reach, with both hands for the door. She did not touch the control handle before the elevator started up.

The plaintiff suffered serious and permanent injuries, including the necessary amputation of his right leg. Plaintiff's position is that his injuries were caused by the negligence of Shepard Warner by virtue of its failure to perform duties assumed by it under the terms of a service contract it had with Dickerson's em-

ployer, the Cincinnati Club. The terms of that contract required that a weekly examination of the elevator be made by the defendant company. The service to be provided was, "to consist of weekly examination of the elevator, including signal devices and oiling and cleaning machine, motor and controller, greasing or oiling bearings and guides, and making necessary minor adjustments at the time of regular examination; * * *."

Dickerson contends that the elevator's sudden ascent was attributable to two conditions of disrepair; first, that the edges of the locking mechanism, the grooves in which the control handle rested, were so worn that the handle could move from the off position to another position without first manually lifting it from the notch or groove in which it was placed and, second, that the mainspring in the control mechanism which operated the "dead man's control" was weakened to the extent that it would not return the control handle to the center, off position, automatically, nor hold it in that position. The combination of these two defects, along with the normal vibrations attendant on movement within the car, according to plaintiff's theory, caused the handle to fall from the off position into the up position, thereby sending the elevator upward while Dickerson was engaged in opening the fire door at the sub-basement level.

Plaintiff charges that by virtue of its contract with the Cincinnati Club, the defendant was under a duty to discover and remedy, or at least to report, these defects. Its claimed failure to perform these duties is the basis of this action.

■ Whether Shepard Warner owed such a duty to Dickerson must, under the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 be determined by the law of Ohio. The Supreme Court of Ohio in the case of Durham v. Warner Elevator Mfg. Co., 1956, 166 Ohio St. 31, 139 N.E.2d 10, 11, resolving the legal consequences of a service contract identical in all respects with the one here, save that it did not include an examination of signal devices, held that such a contract imposed a duty on the servicing company to perform its inspection with care and if it negligently performed its duty and a person was injured because of its negligence, that person had an action for damages against the servicing company based on tort.

■ The syllabus of the court in the Durham case (which under Ohio practice is the law of the case) stated in part that where "the equipment is of such a nature as to make it reasonably certain that life and limb will be endangered if such work is negligently performed" liability will follow negligent performance of such duty. It is clear that the automatic return feature of the elevator control switch, the "dead man's control," is a very important safety device, a device which, if not in proper working condition, is dangerous to life and limb. If the control was in fact defective, defendant owed a duty to Dickerson to discover and remedy the defect, or at least to disclose such defect in the report of its inspection. Durham v. Warner Elevator Mfg. Co., 1956, 166 Ohio St. 31, 139 N.E.2d 10. Defendant's agents who made the weekly inspections of the elevator neither reported or discovered the proven defects in the elevator. Defendant's liability, if any, is thus predicated on negligence. The question to be determined, therefore, is whether the district court erred in taking the issue of negligence from the jury.

■ Under both federal and Ohio practice, a verdict should not be directed against a plaintiff in a negligence case where the evidence offered to sustain or defeat a finding of negligence is such that reasonable men might draw different inferences therefrom, or come to different conclusions as to whether such evidence established or failed to establish the negligence charged. Wilkerson v. McCarthy, 1948, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Lovas v. General Motors Corp., 6 Cir., 1954, 212 F.2d 805; Durham v. Warner Elevator Mfg. Co., 1956, 166 Ohio St. 31, 139 N.E.2d 10. In ruling on a motion for a directed verdict, the trial judge must construe the evidence most strongly

in favor of the party against whom the motion is made, drawing all permissible inferences from the evidence presented. Baltimore & O. Ry. Co. v. Henery, 6 Cir., 1956, 235 F.2d 770; Durham v. Warner Elevator Mfg. Co., 1956, 166 Ohio St. 31, 139 N.E.2d 10; Wilkeson v. Erskine & Son, Inc., 1945, 145 Ohio St. 218, 61 N.E. 2d 201; Hamden Lodge No. 517, I.O.O.F. v. Ohio Fuel Gas Co., 1934, 127 Ohio St. 469, 189 N.E. 246. The test in this case, therefore, is whether construing the testimony most strongly in favor of Dickerson, there was competent evidence to support a finding that defendant was negligent in failing to perform the duties imposed by its inspection contract, and that such negligence was a proximate cause of plaintiff's injuries. From a review of the relevant evidence, we believe that plaintiff met this test.

■ Plaintiff testified that he did not have his hands on the control handle when the elevator began its climb. Gussie Fitch, the only other person on the elevator when the events involved took place, testified that she did not touch the controls until the elevator had reached the first floor. She also corroborated Dickerson's statement that he had reached for the fire door with both hands. Although a prior statement of this witness, given to defendant's agent before trial, was in some respects contradictory of her testimony in court, her credibility and the weight to be given to her testimony were matters for the jury's determination. Lovas v. General Motors Corp., 6 Cir., 1954, 212 F.2d 805.

■■ Several of plaintiff's witnesses testified that, prior to the injuries to Dickerson, they noticed, while operating the elevator, that it moved upward without any use of the manual controls and that the control handle would not center itself automatically. There was evidence that the corners of the metal that formed the grooves in which the handle operated and the slot which would, if in good repair, hold the handle in the neutral position were worn, and the slot corners made round instead of square, as they were originally designed. The elevator in question had been installed in 1923. There was further evidence that prior to the casualty to plaintiff, the control handle had, by itself, moved from the neutral position into the first or low speed position. The supervising elevator inspector for the city of Cincinnati, one Brune, testified that upon testing the elevator on the day of, and immediately following, the accident he found that the "dead man's control" did not function as it should, in that it would not stop the machine automatically. He also found that by installing a new spring in the mechanism, the control worked as it should. The Chief of Elevator Inspection for the State of Ohio testified that the control handle would not lock in the off position because of the condition of disrepair of the locking mechanism. From the testimony, a jury could properly find that the insufficiency of the spring and the locking mechanism would have been discoverable by an inspector by operating the elevator. The inspection made by defendant weekly, however, did not include operating the elevator but was only a visual examination of the cables, guides and other mechanisms. A qualified expert gave his opinion that the elevator's ascension which injured the plaintiff was caused by the control handle falling from its neutral position into an "on" position. Defendant's lay and expert witnesses contradicted some of the plaintiff's evidence and disputed the conclusions of his experts. Cross-examination of plaintiff's witnesses and some statements taken before trial produced some contradictions in the testimony of such witnesses. The weight given to lay and expert testimony and the credibility of such witnesses was for the jury to determine. O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 1950, 183 F.2d 733. The conflicts in the testimony introduced should have been submitted to the jury so that it could resolve such factual disputes. Wilkerson v. McCarthy, 1948, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Durham v. Warner Elevator Mfg. Co., 1956, 166 Ohio St. 31, 139 N.E.2d 10. We are satisfied that plaintiff's evidence

was sufficient to go to the jury, and the judgment for defendant will be reversed.

Since a new trial will be necessary, it would be appropriate to review some rulings on evidence which plaintiff claims were erroneous.

Experts called by plaintiff, asked to give their opinions as to the cause of the elevator's sudden ascent, were not permitted to do so. We have held that a witness experienced in technical matters and qualified to do so, may give his opinion as to the cause of a matter even though it may involve an ultimate fact to be finally decided by the jury. Peoples Gas Co. of Kentucky v. Fitzgerald, 6 Cir., 1951, 188 F.2d 198; Detroit, T. & I. R. Co. v. Banning, 6 Cir., 1949, 173 F.2d 752. See also, Westchester Fire Ins. Co. v. Hanley, 6 Cir., 1960, 284 F.2d 409. This rule should apply upon retrial of the case at bar. The weight to be given to such testimony and the credibility of the expert witnesses are matters for the jury's consideration. O'Donnell v. Geneva Metal Wheel Co., 6 Cir., 1950, 183 F.2d 733.

Objections to several hypothetical questions put to plaintiff's experts were sustained because the court felt the questions involved failed to include certain facts in evidence. Although a hypothetical question need not contain all the testimony presented and a party may include only the facts which support his theory, the form and the length of such a question are matters generally for the discretion of the trial judge. Ranger, Inc. v. Equitable Life Assur. Soc., 6 Cir., 1952, 196 F.2d 968. Where a hypothetical question leaves out facts in evidence which so qualify the facts included that an answer to the question would be misleading and based upon inadequate premises, objection to the question should be sustained. Where, however, the party propounding such question disputes the truth of the so-called qualifying fact, or it cannot be said that the omitted fact was an integral or necessary part of the factual premise to the expert's conclusion, it is not essential that such fact be included in the question.

The questions propounded to plaintiff's witnesses Albin J. Brune and C. J. Gould fairly presented plaintiff's theory of the case and were based upon factual assumptions which were supported by testimony. We feel that it was error not to permit the mentioned witnesses to answer the hypothetical questions asked of them. See American Alliance Ins. Co. v. Keleket X-ray Corp., 6 Cir., 1957, 248 F.2d 920; Haas v. Kundtz, 1916, 94 Ohio St. 238, 113 N.E. 826; Community Traction Co. v. Wandtke, 1929, 32 Ohio App. 207, 167 N.E. 701. Any additional facts which defendant felt were necessary to present to the jury could have been adduced on cross-examination.

Finally, plaintiff complains that he was not permitted to introduce evidence contradictory of the testimony of one of his own witnesses. Gould, one of the expert witnesses, was asked whether the handle could fall out of the center, off position. Previously, Brune, another of plaintiff's experts, had testified that in his opinion the spring had enough tension to hold the handle in place. For that reason the court sustained an objection to the aforesaid question asked of the witness Gould. The rule in Ohio, as well as in federal practice, is that a party is not precluded from proving his case by any relevant evidence, even though that evidence may contradict the testimony of a witness previously called by him. Northern Pac. Ry. Co. v. Everett, 9 Cir., 1956, 232 F.2d 488; Baldassarre v. Pennsylvania R. Co., 6 Cir., 1928, 24 F.2d 201; State Auto Mutual Ins. Ass'n of Columbus, Ohio v. Friedman, 1929, 34 Ohio App. 551, 171 N.E. 419, affirmed 1930, 122 Ohio St. 334, 171 N.E. 591; Hurley v. State, 1889, 46 Ohio St. 320, 21 N.E. 645, 4 L.R.A. 161.

Defendant's motion for a directed verdict also relied upon a claim that plaintiff was guilty of contributory negligence as a matter of law. The trial judge did not rely on a holding to that effect, saying, "I am not going into the contributory negligence feature here because I don't think it's important." Our review of the record before us leads us to the

conclusion that the question of plaintiff's contributory negligence was one of fact for the jury's determination.

The judgment for defendant is reversed and the cause remanded to the district court for a new trial.