James N. BAILEY, Administrator of the Estate of Robert L. Bailey, Plaintiff,

v.

ERIE RAILROAD COMPANY, a corporation, Defendant.

Civ. A. No. 30643.

United States District Court
N. D. Ohio, E. D.
July 13, 1956.

**352**

Nathan Sieman, Warren, Ohio, for plaintiff.

Robert M. Weh, Cleveland, Ohio, for defendant.

WEICK, District Judge.

Plaintiff's decedent was struck and killed by defendant's westbound passenger train while he was walking across the railroad tracks at the grade crossing on South Main Street in Windham, Ohio in broad daylight.

The administrator of his estate brought action in this Court for wrongful death for the benefit of the next of kin. Jurisdiction of the Court was based on diversity of citizenship.

The case was tried before a jury which failed to agree upon a verdict and was discharged. The Court, thereupon, entered judgment for the defendant on its motion to arrest the testimony from the jury and for judgment which had been made at the conclusion of all the evidence, ruling on which had been reserved.

Plaintiff's motion to vacate such judgment and for a new trial questions the propriety of the judgment entered by the Court. Plaintiff claims that he had made a prima facie case requiring its submission to a jury and that the Court, in entering judgment for defendant, usurped the functions of the jury.

At the time of the accident, decedent was 17 years old, weighed 170 pounds, was 6 feet 1 or 2 inches tall, and in "perfect health." He had completed the tenth grade in the public schools. He had lived with his divorced mother for one year in Florida and shortly before the accident went to live with his father in Windham, Ohio.

One week before the accident, decedent had secured employment at a coal yard located adjacent to defendant's right-of-way near to and southeast of the crossing in question. In connection with his employment, he passed over the crossing many times each day and was thoroughly familiar with it.

Two tracks of the defendant for east and westbound trains cross over South Main Street at grade. In addition to the usual crossing warning signs, the defendant had constructed and maintained automatic flasher signal lights which were

located on each side of the crossing and were in plain view.

There was a clear and unobstructed view to the east for more than 800 feet at distances extending to 10 feet north of the crossing. Further view to the east was obstructed by a curve in the tracks to the south and the presence of a freight train on the eastbound tracks.

Just before the accident, the decedent had driven his employer's truck from the coal yard across the tracks and parked it in a vacant lot north of the crossing. He was returning on foot to the coal yard and was walking toward the tracks. When he reached the crossing an eastbound freight train was going over the crossing on the second track from the north. He waved at the flagman in the caboose. He kept on walking as the freight train cleared the crossing and was struck by the westbound passenger train on the first tracks.

The automatic flasher signal lights had commenced to operate when the eastbound freight train approached the crossing. They continued to operate until both trains had cleared the crossing.

The freight train was a long one. It consisted of 91 cars and extended about 4,207 feet in length. It was traveling at approximately 50 miles an hour which would require about one minute to pass over the crossing.

The caboose of the freight train passed the engine of the passenger train from one to two car lengths east of the crossing.

The decedent must be held to have seen the flasher lights in operation when the freight train was passing over the crossing, as they were in plain view. He probably thought that the tracks were clear when the freight train passed over the crossing and did not contemplate the approach of the passenger train from the opposite direction on the other tracks.

Had decedent looked, he could have seen the passenger train at least 800 feet to the east. The passenger train was travelling at the rate of 60 miles an hour.

Decedent would not have been killed had he not walked on the tracks in disobedience to the warning of the flasher signal lights. The flashing of the lights was warning to him of the immediate approach of a train.

The flagman on the freight caboose saw decedent walking toward the tracks when decedent was within a distance of 10 to 12 feet therefrom.

The engineer on the passenger train saw decedent walking toward the tracks when decedent was within a distance of 4 to 7 feet therefrom. The passenger train engine at that time was 60 to 70 feet from the crossing.

The fireman on the passenger train saw decedent walking toward the tracks when decedent was about 10 feet away from the tracks and the engine about 800 feet east of the crossing.

Plaintiff's witness, William D. Dugger, saw decedent standing in the street, but he did not know exactly where. The freight train was passing over the crossing at the time and Dugger and his two little children were watching the train and were north of and to the rear of the decedent. Dugger saw decedent take at least two steps forward when he was hit by the passenger train. Dugger testified that he didn't pay enough attention to decedent to observe whether decedent looked to the right or left. Dugger did not see the passenger train until it struck decedent.

Dugger did see the flasher signal lights in operation when decedent approached the crossing. It was necessary, however, for his recollection to be refreshed by the statement he made shortly after the accident.

Decedent's employer, Daniel L. Lutz, who also was called as a witness by plaintiff, testified on cross-examination that the flasher signal lights worked continuously while the freight train was going over the crossing until after the accident.

Catherine Hall, a neighbor who lived near the tracks, was called as a witness by defendant. She testified that the

flasher lights were operating while the freight train was passing over the crossing and continued to flash as the passenger train came into the crossing.

The fireman on the passenger train saw the flasher lights still in operation after the accident.

The engineer on the passenger train testified as to the manner of operation of the flasher lights. An assistant signal supervisor testified that the flasher lights were operated from circuits located at 2,600 feet east and west of the crossing.

There was no evidence offered by plaintiff to contradict the overwhelming evidence as to the operation of flasher lights.

As to the statutory signals, both engineer and fireman testified positively that the bell on the engine was ringing continuously since the train left Warren. They also testified as to the blowing of the whistle when the train reached the whistle post about 1,700 feet east of the crossing; that the whistle was blown 4 times—2 long and 2 short blasts.

■ The witness Lutz testified that he did not hear the whistle until after the passenger train had cleared the crossing. This did not create any issue of fact, as the witness was working on his truck at the time. The freight train was between the witness and the passenger train and was making noise. The witness admitted that the whistle might have been blown when the passenger train was from 1000 to 2000 feet away. See: Hicks v. Baltimore & O. R. Co., 160 Ohio St. 307, 116 N.E.2d 307; Clark v. Baltimore & O. R. Co., 6 Cir., 196 F.2d 206, certiorari denied in 344 U.S. 830, 73 S.Ct. 36, 97 L.Ed. 646.

The witness Dugger also testified that he did not hear the whistle or the bell. He was not paying particular attention. He was looking after his children. He also said that the whistle may have been blown, but he didn't hear it. He testified that decedent was struck by the overhang of the diesel locomotive.

The flagman on the freight train did not hear the whistle or bell of the passenger train.

Mrs. Hall heard the whistle of the passenger train, but could not tell about where. She did not remember hearing the bell ringing.

■ There was no ground of negligence which required submission to the jury except possibly the issue of speed of the passenger train under the conditions then and there existing.

It must be remembered that the passenger train was out in the open country passing through a small country village. There were no speed limits fixed by law.

■ The rule of Hicks v. Baltimore & O. R. Co., supra, was applicable. This rule is that no rate of speed of a railroad train approaching a crossing, in the absence of legislation, is of itself negligence. See: Pennsylvania R. Co. v. Stegaman, 6 Cir., 22 F.2d 69.

■ In reserving decision on defendant's motion for judgment, the Court followed the procedure recommended in the case of Fratta v. Grace Lines, Inc., 2 Cir., 139 F.2d 743. There was no basis, therefore, for the conclusion drawn by counsel for plaintiff in his memorandum that in submitting the case to the jury, the Court had determined that plaintiff had made out a prima facie case.

■ The legal presumption that each party was in the exercise of ordinary care prevails only until rebutted by evidence to the contrary. Biery v. Pennsylvania R. Co., 156 Ohio St. 75, 99 N.E.2d 895 (3rd Syl.) Carson v. Metropolitan Life Ins. Co., 165 Ohio St. 238, 135 N.E.2d 259.

■ In the case at bar, substantial evidence was offered which rebutted the presumption that decedent was in the exercise of ordinary care.

The positive uncontradicted testimony was that the flasher signal lights were operating when decedent approached the crossing. It does not help plaintiff to claim that decedent may not have seen the flasher signal lights. The fact was that the flasher signal lights were there in operation and if plaintiff's decedent did not see them, he did not look. The

railroad company satisfied its obligation when it installed and operated the flasher signal lights. It had no means of compelling the decedent to look at them.

The decedent could have seen the approaching passenger train at least 800 feet away if he had looked. Since he was on foot he could easily have stopped walking or stepped away from the tracks if he had been too close thereto. The conclusion is inescapable that he never looked as the train was there to be seen.

The law of Ohio required that the decedent look and listen for the approach of trains at a place where such looking and listening would be effective.

Counsel for plaintiff in his supporting memorandum states that the decisions of the Supreme Court of Ohio on which the Court relied in entering judgment for defendant are very old and are now outmoded. These cases are: New York, C. & St. L. R. Co. v. Kistler, 66 Ohio St. 326, 64 N.E. 130; Baltimore & O. R. Co. v. McClellan, 69 Ohio St. 142, 68 N.E. 816; Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L. R. 538.

The cases have never been overruled by the Supreme Court. In fact, the Kistler case was cited in Hicks v. Baltimore & O. R. Co., supra, and by the Court of Appeals for this Circuit in Pennsylvania R. Co. v. Stegaman, supra. The McClellan case was cited in Biery v. Pennsylvania R. Co., 156 Ohio St. 75, at page 79, 99 N.E.2d 895. The Kistler case has been regarded as a landmark case in Ohio.

Under the doctrine of Tompkins v. Erie R. Co., 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, this Court is bound to follow the decisions of the Supreme Court of Ohio in matters of state law and cannot overrule them. In West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, this doctrine was extended to appellate decisions of the state.

The Biery case was different from the case at bar. It involved a crossing about 186 feet in width with eleven tracks. A switch engine was standing near the crossing emitting steam which obscured view to the east.

In his closing argument to the jury counsel for plaintiff said:

" * * * What happened is this: This train coming by at 65 to 70 miles an hour at such a rate pulled that boy in towards the corner of that train from where he was standing outside the train. The side of the train was two and a half feet outside of the rails, mind you. The boy was standing at least two and a half feet outside of the rails and probably more. But the speed of this train pulled that boy by the suction of that passing train at 75— 65 miles an hour, pulled that boy into the corner of the train and hit him when the boy was in the safe place before."

The only trouble with this argument as to suction was that there was not one iota of evidence in the record to support it.

In the case at bar reasonable minds could reach but one conclusion, namely, no negligence of the railroad was a proximate cause of the death of decedent and that decedent was guilty of contributory negligence as a matter of law which proximately caused his death.

The plaintiff's motion to vacate the judgment and for a new trial is denied.