**John F. NEWCOMB, Administrator of the Estate of Herman L. Wahn, Deceased, Plaintiff-Appellee,**

**v.**

**The BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellant.**

**No. 15893.**

United States Court of Appeals Sixth Circuit.

Nov. 19, 1965.

Ralph H. Talbot and Robert B. McAlister, Columbus, Ohio (Alexander, Ebinger, Wenger & Holschuh, Robert B. McAlister, Columbus, Ohio, on the brief), for appellant.

Richard L. Miller, Columbus, Ohio (Erle H. Bridgewater, Jr., Athens, Ohio, on the brief), for appellee.

Before: MILLER * and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This appeal arises out of a railroad-crossing accident which occurred on May 12, 1961, at about 5:50 p. m., near Athens, Ohio, at a point where Athens County Road No. 24, intersects the Baltimore and Ohio Railroad Company tracks. At the time and place above mentioned, one Herman L. Wahn, hereinafter called the deceased, was killed as a result of a collision between a train of the Baltimore and Ohio Railroad Company, defendant-appellant herein, and an automobile driven by the deceased.

John F. Newcomb, as administrator of the estate of the deceased, brought an action in wrongful death under the Ohio Statutes (Sec. 2125.01–2125.04 Ohio Rev. Code), against the Baltimore and Ohio Railroad Company, in the United States District Court for the Southern District of Ohio, Eastern Division. The case was tried to the court and resulted in a judg-

---

* Judge Miller did not participate in this decision.

ment for the plaintiff in the sum of $10,000. This appeal followed. The parties will be referred to as plaintiff and defendant.

At the place where the collision occurred, the defendant has two tracks which parallel each other and run in a general easterly and westerly direction. The north track is a siding or switch track and the one to the south is the main track. The south rail of the siding and the north rail of the main track were nine feet apart. The rails of each track were four feet eight and one-half inches apart. U. S. Highway Route 50, parallels the railroad tracks. It was stipulated that it was seventy-four feet from the middle of Route 50 to the north rail of the siding track. Road No. 24 runs in a general north and south direction, is sixteen feet wide and dead ends at Route 50, forming a "T" intersection. Cole's Filling Station was located on the north side of Route 50 and a little to the west of the projected line of Road No. 24.

At the time of the collision and for some time prior thereto there was a cut of boxcars standing on the siding track east of the intersection of the track and Road No. 24. The trial judge found that the west end of this cut of boxcars was from fifty-eight to one hundred feet from Road No. 24. This finding is clearly erroneous. There is uncontroverted testimony by Corporal H. G. Miley of the Ohio State Patrol that at the time of the accident the distance from the west end of the cut of cars to the middle of Road No. 24 was one hundred and seven feet. Corporal Miley was an eye witness to the entire accident. He conducted the investigation for the Highway Patrol and with Patrolman Fortunato measured the distance at the time of the accident. The proof is clear and convincing that this distance immediately after the accident was one hundred and seven feet. A correct factual finding as to this distance is critical in the disposition of this case. In the face of this testimony, the trial judge erred in finding a variation from fifty-eight feet (based upon a measurement taken about a week before the ac-

cident) to one hundred feet (based upon estimates by some of the witnesses).

Further, we find that the evidence does not support the inference that the cut of boxcars was moved to the east after the accident.

There was one standard white railroad crossarm sign at the south side of the tracks and on the east side of Road No. 24. There is no claim that there were any curves in the defendant's right-of-way, or tracks east of Road No. 24 which would obscure the vision of the driver of an automobile. The deceased had traveled over the crossing on the day of the accident. He lived in the vicinity of the intersection of Road No. 24 and the railroad crossing and was thoroughly familiar with it. The defendant's train was a work train consisting of a Diesel engine, five cars and a caboose, and was traveling west on the main track at about thirty-two miles per hour. The trial judge found that the train crew failed to sound a horn, to blow a whistle, to ring a bell or to give any other warning of its approach to the crossing. While the evidence on this subject is largely negative, we accept the finding of the trial judge.

At the time of the accident, the deceased came out of the parking lot of Cole's Filling Station, onto U. S. Route 50, went east a few feet, turned right onto Road No. 24, and proceeded south across the defendant's tracks. There is no real dispute on the facts as to the occurrence of the accident. Corporal Miley was driving west on U. S. Route 50 and when he was within six or seven hundred feet of the intersection of Road No. 24 he became aware that a train was traveling west on the main track parallel to him. He could not see this train, except occasionally the tops of cars, due to the cut of cars between him and the main track. Corporal Miley was not conscious of hearing signals from the train but he did not know whether it was the noise of the train or signals that attracted his attention to it.

Corporal Miley saw the deceased come out of Cole's Filling Station and he was about four hundred feet east on Route

50 when the deceased turned right onto Road No. 24. He was a witness from the inception to the conclusion of this tragic race for the crossing between the train and the deceased's automobile. As both vehicles sped on toward each other, he had mixed feelings as to whether the deceased would clear the track ahead of the train or whether a collision would be inevitable. He thought the automobile was going to make it and his conclusion was that only the rear of the automobile failed to clear the farthermost rail of the main track. Corporal Miley testified that the deceased was traveling at the rate of twenty to twenty-five miles an hour and that he went onto the railroad tracks without stopping or slackening his speed. Other witnesses testified that the deceased was traveling only about five miles per hour as he approached the tracks.

The controlling question in this case is whether the deceased was guilty of negligence as a matter of law which contributed to his injury and death.

The trial judge made the following findings of fact:

"8. The railroad cars thus situated effectively prevented motorists approaching and entering the crossing from the north on County Road No. 24, from seeing the approach of a west-bound train on the main track until the automobile of said motorist had entered and was upon the main track.

"9. Plaintiff's decedent exercised ordinary care for his own safety as he approached the crossing and the main line track, in that he (1) operated his car at a very slow rate of speed, that is, approximately five (5) miles per hour or less, (2) listened and (3) looked.

"10. There was no point at which looking by the decedent would have been effective to disclose the presence of defendant's locomotive prior to the entry of decedent's automobile upon the main line track."

On the basis of these facts the trial judge found that the deceased was not guilty of contributory negligence as a matter of law. These findings are not supported by the evidence and are clearly erroneous, except that part of the finding in No. 9 to the effect that the deceased was traveling at about five miles or less per hour. We accept this finding as to the rate of speed, although there was a sharp conflict in the testimony of plaintiff's own witnesses. There were only two witnesses who actually saw the deceased as he approached and entered upon the crossing. Mr. Mansfield saw the collision from a window of Cole's Filling Station and Corporal Miley witnessed it from his automobile as he drove along Route 50. Both of these witnesses testified that the deceased did not stop before entering upon the crossing. Neither of these witnesses testified that the deceased looked and listened. They were not in position to see him look, and listening was a subjective fact that only the deceased would know.

Viewing the facts in the most favorable light to the deceased, at any point on Road No. 24, he would have had a clear view of the train for 107 feet when the front of the locomotive reached the west end of the cut of boxcars. There was testimony by witnesses Mansfield, Cole and DeMett that, with the cut of boxcars on the siding track, a motorist could not see a train approaching from the east on the main track until the motorist was on the main track. This testimony was largely conjectural and not a result of an accurate test or measurement. The physical facts disprove this finding of the trial judge that a motorist could not see a westbound train on the main track until his automobile had entered and was upon the main track. At some point on Road No. 24 as the deceased approached the siding track there was an angle which would permit a view past the cut of cars and east on the main track. The nearer he approached the siding track, the greater would be his view. At the north rail of the siding track the view east on the main track would be virtually un-

limited. This can be clearly demonstrated by a scale diagram, drawn in accordance with the evidence, showing the railroad tracks, Road No. 24, Route

APPENDIX – A

50, and the cut of cars on the siding track. Laying a straight edge from the southwest corner of the cut of cars across Road No. 24 will show the angle of view

east on the main track as one approaches the railroad tracks on Road No. 24.

 It is apparent that had the deceased looked effectively he could have seen the train which was obviously in view while he was in a position of safety. In Detroit, Toledo & Ironton Rd. Co. v. Rohrs, 114 Ohio St. 493, 500, 151 N.E. 714, 716, the court said:

"This duty has been defined many times by this court and by many other courts, and it is that the traveler must look and listen for the approach of trains before crossing and furthermore that he must look and listen at a place and in a manner that will make the looking and listening effective."

See also Baltimore and Ohio Railroad Company v. Joseph, 112 F.2d 518, C.A.6, cert. den. 312 U.S. 682, 61 S.Ct. 551, 85 L.Ed. 1121, rehearing denied 312 U.S. 714, 61 S.Ct. 710, 85 L.Ed. 1144; Carter v. Pennsylvania R. Co., 172 F.2d 521, C.A.6; Detroit, T. & I. R. Co. v. Yeley, 165 F.2d 375, C.A.6; Patton v. Pennsylvania Rd. Co., 136 Ohio St. 159, 24 N.E.2d 597; Pennsylvania Rd. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538; Woodworth v. New York Cent. Rd. Co., 149 Ohio St. 543, 80 N.E.2d 142. The facts of this case do not bring it within the purview of Baltimore and Ohio Railroad Company v. Henery, 235 F.2d 770, C.A.6; or Baird v. Cincinnati, New Orleans & Texas Pacific Railway Co., 315 F.2d 717, C.A.6.

We conclude that the deceased was negligent as a matter of law in entering upon the railroad crossing in front of the approaching train, which he would have seen had he looked and listened effectively while he was in a position of safety.

Plaintiff's witness Corporal Miley was aware of the approach of the train as he drove along Route 50 and onto Road No. 24. Donald Mansfield, also a plaintiff's witness, testified that he was in Cole's Filling Station and that he heard the train coming up the track. It appears that the deceased was in equally as good

a position to have been aware of the train's approach.

The negligence of the deceased proximately contributed to the cause of the collision. For this reason the judgment of the District Court is reversed and the case remanded with instructions to dismiss the complaint.