398 F.2d 914
 Diane LONES, a minor, by her father and next friend, Homer
J. Lones, Homer J. Lones and Metropolitan Life
Insurance Company, Plaintiffs-Appellees,
v.
DETROIT, TOLEDO AND IRONTON RAILROAD COMPANY, Defendant-Appellant.
 No. 17912.
 United States Court of Appeals Sixth Circuit.
 July 31, 1968.
 
 John W. Hackett, Jr., Toledo, Ohio (Shumaker, Loop & Kendrick, Donald M. Mewhort, Jr., Toledo, Ohio, on the brief), for appellant.
 Donald P. Traci, Cleveland, Ohio (Spangenberg, Hasenflue, Shibley & Traci, Cleveland, Ohio, on the brief), for appellees.
 Before WEICK, Chief Judge, CELEBREZZE and PECK, Circuit Judges.
 CELEBREZZE, Circuit Judge.
 
 
 1
 Plaintiffs-Appellees brought this suit originally in the Court of Common Pleas of Allen County, Ohio, to recover for injuries sustained by the minor Plaintiff as the result of a railroad crossing accident. On a motion by the Defendant-Appellant, the case was removed to the United States District Court for the Northern District of Ohio, which entered judgment on a jury verdict for the Plaintiffs. Defendant-Appellant has appealed that judgment alleging numerous grounds for error. We find no reversible error in the proceedings below, however, and affirm the judgment of the District Court.
 
 
 2
 The accident occurred in Uniopolis, Ohio, at a two-track grade crossing, consisting of a main track and an elevator sidetrack spaced about eighteen feet apart. The railroad track ran north and south, intersecting with the east-west Highway 67. On the day of the accident, as the result of a crew working at a grain elevator area near the crossing, the crossing signal had been activated for 20-25 minutes prior to the accident. Diane Lones, the minor Plaintiff, 15 years 10 months of age, and a friend, Melanie Golden, had been riding their bicycles in the area during the time that the crew was working near the crossing and had passed over the grade crossing against the signal at least one time before the accident. Some of the train crew had seen the children playing at or near the crossing.
 
 
 3
 Just before the accident Diane and Melanie met Jimmie Evans and the three were playing in an elevator area east of the grade crossing when Diane decided to ride over to the crossing. As she approached the crossing the train crew was in the process of making a 'flying switch': a maneuver by which cars at the end of the train are switched onto the sidetrack with sufficient momentum to permit coupling with other cars on the sidetrack. In this case the train was traveling from south to north. The evidence is in conflict whether the train engines were approaching the crossing, on the crossing, or just past the crossing when Diane rode upon the sidetrack. At this time a cut of three cars south of the crossing was floating freely down the sidetrack as a result of the flying switch maneuver. One crew member was at the rear of the first car of the cut of cars to brake the cut and otherwise to control the coupling of the cut with other cars north of the crossing. This crew member's view of the track in front of the cut was severely restricted; he could see only a limited amount of the track even by leaning out to the side of the cut.
 
 
 4
 Evidence is in conflict whether Diane stopped her bike on the sidetrack or between the two tracks. Likewise, evidence is conflicting whether the engineer or other crew members saw Diane on the crossing as the train approached the crossing, when the train came onto the crossing, or after the train was on the crossing. In any case, as a result of the noise of the diesel engines in front of her Diane did not hear the cut of cars coming down the sidetrack and became aware of the danger only from the shouted warnings of either her friends, who had also come down near the crossing, or the members of the train crew. In response to the warnings Diane either stepped backward slightly or turned to look over her shoulder, but she saw the danger too late to avoid being struck by the cut of cars.
 
 
 5
 This brief factual outline will be sufficient to deal with the objections raised by the Defendant-Appellant; for due to the nature of the objections raised only the evidence most favorable to the Plaintiffs can properly be considered by this Court.
 
 
 6
 In this case, as in any diversity action, in considering each issue raised by the Defendant-Appellant we must first answer the threshold question as to what body of law the Court must look to ascertain the standard to be applied in resolving that particular issue. The doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is not all-pervasive; where the doctrine begins usually presents no problem, but where the emanations of that doctrine cease to affect the proceedings in a federal trial court is a more perplexing determination. Compare Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949), with Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).
 
 
 7
 Matters that can clearly be labeled substantive, such as the standard to be applied in determining whether the Defendant-Appellant was negligent, are of course, controlled by state law. We do not take it, however, that the Defendant-Appellant seriously contends that under the facts of this case it could not have been found negligent under the law of Ohio. The flasher signals were activated for a period of 20-25 minutes. During that time several crewmen had seen children playing near the crossing, and at least one crewman had seen children passing over the crossing in violation of the flasher signals. In spite of this knowledge, the crew switched a cut of cars onto the sidetrack under the control of a crewman whose view of the track was severely restricted. No special precautions were taken; no flagman protected the crossing; and from their testimony, apparently the crew did not even bother to keep a special lookout for children. The engine blocking the crossing might prevent automobile drivers from coming onto the crossing, but it would have no effect on the danger to children that the crew knew, or should have known, existed at that time. In Ohio the care to be observed in avoiding injury to children is greater than the care required to avoid injuring adults. Cleveland Rolling-Mill Company v. Corrigan, 46 Ohio St. 283, 20 N.E. 466, 3 L.R.A. 385(1889); Maumee Valley Railways & Light Co. v. Hanaway, 7 Ohio App. 99 (1915).
 
 
 8
 On the other hand, the Defendant-Appellant does strongly urge that the issue of the minor Plaintiff's contributory negligence should have been taken from the jury.[1] This contention is based on alternative grounds: (1) that violation of the flasher signal was negligence as a matter of law, or (2) that under the evidence presented the only conclusion the jury could reach was that the minor Plaintiff was negligent. If either ground is correct, it would have been reversible error for the District Court to fail to instruct the issue of contributory negligence out of the case. Moore v. Smith,343 F.2d 206 (3rd Cir. 1965). We find, however, that the minor Plaintiff was not negligent per se under Ohio law and that sufficient evidence was presented under both the federal standard and the Ohio standard to take the issue of contributory negligence to the jury.
 
 
 9
 Resolution of the question raised by the first ground is clearly controlled by Ohio law. As indicated earlier, statutes or case law that make specific acts or omissions negligence are regulations of primary activity that are substantive under the Erie doctrine and thus must be followed by the federal courts in diversity actions. See Hanna v. Plumer, 380 U.S. 460, 474, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring). Ohio Revised Code 4511.62 (Page 1965) provides that no one shall drive a vehicle, which includes a bicycle, over a railroad grade crossing when a clearly visible electric signal is operating. No one contests that the minor Plaintiff violated this statute, but in Ohio violation of a statute by a child is not negligence per se. Michalsky v. Gaertner, 53 Ohio App. 341, 5 N.E.2d 181 (1935). Whether the violation is negligence depends upon the mental capacity and experience of the child and upon the circumstances of the particular case. Wheaton v. Conkle, 57 Ohio App. 373, 14 N.E.2d 363 (1937).
 
 
 10
 These cases make it clear that the negligence of a child is always a fact question; therefore, the Defendant-Appellant's alternate ground for taking the issue of contributory negligence from the jury must be resolved. Determining whether the evidence in this case was sufficient to go to the jury, however, raises a collateral issue, whether the applicable standard is the federal standard or the state standard, on which there is a considerable conflict of opinion in the Circuits.[2] Our early cases, O'Donnell v. Geneva Metal Wheel Co., 190 F.2d 59 (6th Cir. 1950); Lovas v. General Motors Corp., 212 F.2d 805 (6th Cir. 1954), holding that the state law applied, were decided at a time when the decisions of the United States Supreme Court indicated that for purposes of diversity jurisdiction a federal court was, 'in effect, only another court of the State * * *' Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1954); Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940). More recent decisions of the Supreme Court indicate that such a broad rule states too much and that '* * * 'outcome-determination' analysis was never intended to serve as a talisman.' Hanna v. Plumer, 380 U.S. 460, 466-467, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965); Byrd v. Blue Ridge Rural Elec. Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). These recent developments would make a review of our position appropriate, but we will not reach out to decide the issue since it appears that the Ohio standard and the federal standard are the same.[3] Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 258 (6th Cir. 1961).
 
 
 11
 The federal standard, as stated in Lavender v. Kurn,[4] 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), is:
 
 
 12
 'Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' 327 U.S. at 653, 66 S.Ct. at 744.
 
 
 13
 The Ohio courts phrase the standard in a different manner, stating that the court must construe the evidence and all permissible inferences from the evidence in a light most favorable to the nonmoving party and that matters of weight and credibility are not for the court, Cothey v. Jones-Lemley Trucking Co., 176 Ohio St. 342, 199 N.E.2d 582 (1964); but the resulting application of the rule is the same.
 
 
 14
 Considering the evidence on the issue of contributory negligence, and all permissible inferences from the evidence, in a light most favorable to the Plaintiffs, we find that reasonable minds could differ on the conclusion to be reached. In a rare case where the evidence shows no unusual situation and no evidence is presented to show the minor plaintiff's lack of appreciation of the danger confronting him, a directed verdict for the defendant is appropriate. Bailey v. Erie Railroad Company, 143 F.Supp. 351 (N.D.Ohio 1956). This, however, is not such a case. Here the minor Plaintiff was confronted by a sidetrack and a main track, not two main tracks, which are frequently used simultaneously. The cut of cars was not a train in the usual sense of that term, and it had no horn or whistle, nor even the noise of an engine, to warn of its approach to the crossing. The minor Plaintiff saw the train on the main track, and from the evidence the jury could infer that, given her knowledge and experience, she could reasonably expect no danger from the sidetrack: she was unfamiliar with the switching maneuver employed by the train crew; she had never seen cars moving on both tracks at the same time; and she had seen cars moving on the sidetrack only when being pushed by an engine.
 
 
 15
 In Leach v. St. Louis-San Francisco Ry. Co., 48 F.2d 722 (6th Cir. 1931), a case decided during the Swift v. Tyson[5] era, this Court refused to hold a twelve-year-old boy, who jumped aboard a slowly moving train and was injured, guilty of contributory negligence as a matter of law. Also in our decisions applying Ohio law, we have been reluctant to hold even adults guilty of negligence as a matter of law when they are confronted with unusual situations. See New York Central Railroad Company v. Delich, 252 F.2d 522 (6th Cir. 1958); Fannin v. Baltimore and Ohio Railroad Company, 253 F.2d 173 (6th Cir. 1958). With this background in the Circuit in applying both federal and state law and under the circumstances of this case, we find that the issue of contributory negligence was properly submitted to the jury under an accurate instruction of the Ohio law.
 
 
 16
 Defendant-Appellant further contends, however, that even if the issue of contributory negligence was properly submitted to the jury, it was prejudiced by the District Court's charge to the jury on the doctrine of last clear chance. The asserted error is based on two grounds: (1) that the evidence does not prove the necessary elements for application of the doctrine, or (2) that the charge was inadequate. Whether the giving or failure to give certain instructions is reversible error is clearly controlled by Rule 51, Federal Rules of Civil Procedure, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) supra; but it is equally clear that since the trial judge must '* * * give such explanation or instruction as may be necessary to enable the jury * * * to render a * * * verdict * * *,' Rule 49(b), Federal Rules of Civil Procedure, when a state-created right is being asserted, the state law must be looked to for the substance of the instructions. Lind v. Aetna Casualty and Surety Company, 374 F.2d 377 (5th Cir. 1967).
 
 
 17
 Under Ohio law for the doctrine of last clear chance to apply, it must be shown that the defendant became aware of the plaintiff's situation in time to avoid the accident by the exercise of ordinary care. Peters v. B. & F. Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966). Also the evidence must show that the plaintiff's negligence did not continue and, concurrently with the defendant's negligence, contribute to the accident. Columbus Green Cabs, Inc. v. Seip, Ohio App., 115 N.E.2d 5 (1952); Brock v. Marlatt, 128 Ohio St. 435, 191 N.E. 703 (1934). It is Defendant-Appellant's contention that the timely discovery of the minor Plaintiff's perilous position by the train crew and the cessation of the minor Plaintiff's contributory negligence, if any negligence was found by the jury, cannot properly be inferred from the evidence in this case. If the Defendant-Appellant is correct, the District Court erroneously submitted the doctrine to the jury, and the Defendant-Appellant would be entitled to a new trial. McFall v. Tooke, 308 F.2d 617, 623 (6th Cir. 1962).
 
 
 18
 Application of the last clear chance doctrine becomes necessary only if it is assumed that the jury found the minor contributorily negligent. That the minor Plaintiff might have been negligent in going onto the crossing does not mean, however, that such negligence continued as long as she remained on the crossing. Under the evidence, the jury could have found that the minor Plaintiff was negligent in riding past the flasher signals but that once she was on the crossing with the train engines in front of her that she had no reason to expect danger from the side-track and therefore her original negligence ceased. Further, the jury could have found that remaining on the side track, without taking special precautions, was not negligence considering the minor Plaintiff's age and experience.
 
 
 19
 In its argument on the 'discovered peril' element of the Ohio last clear chance doctrine, the Defendant-Appellant cites several Ohio cases where there was no evidence to support application of the doctrine. E.g., Farmer v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 83 Ohio App. 321, 80 N.E.2d 177 (1947); Kubick v. Cleveland Ry. Co., 7 Ohio Law Abst. 91 (1929). But those cases are of little assistance to us in deciding the instant case where there is evidence to justify application of the doctrine. It must be borne in mind that in determining whether the evidence was sufficient to present a case for the jury our function is exhausted when an evidentiary basis becomes apparent. Lavender v. Kurn, 327 U.S. 645, 647, 66 S.Ct. 740 (1946) supra.
 
 
 20
 Bearing in mind that the jury may discard or disbelieve whatever evidence is inconsistent with its conclusion, we recite that evidence that would show the element of 'discovered peril'. The investigating highway patrolman testified that one of the engineers said that he saw the minor Plaintiff as the train approached the crossing, and Jimmie Evans testified that as the train approached the crossing he saw one of the engineers wave to the minor Plaintiff. It is immaterial that there were some apparent contradictions from prior statements or that the Defendant-Appellant's engineers denied seeing the minor Plaintiff until the engines were on the crossing. The witnesses' credibility and the weight to be given their testimony were matters for the jury. Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255, 259 (6th Cir. 1961). So it is clear that the jury could conclude that the train crew discovered the minor Plaintiff's perilous position.
 
 
 21
 On the question of whether the discovery was in time to avoid the accident by the exercise of reasonable care, the jury could conclude from the evidence concerning the relative speeds and positions of the cut and the engines and the length of time that the minor Plaintiff was on the crossing that at the time the engineer discovered the minor Plaintiff's position there was a considerable distance between the cut and the crossing. The engineer was near the whistle, and three short blasts on the whistle would have alerted the crew that some obstruction was on the track. From the testimony of the brakeman in control of the cut of cars the jury could infer that if such a signal had been given he would have looked to the track in front of the cut of cars and would have had time to stop the cars.[6] So it is also apparent that there was an evidentiary basis on which the jury could consider the doctrine of last clear chance.
 
 
 22
 Defendant-Appellant's contention that the instructions to the jury on last clear chance were inadequate is based on the assertion that the Court failed to properly instruct on the Plaintiff's continuing negligence. The District Court did charge that the Plaintiff's contributory negligence must cease for the doctrine of last clear chance to apply and, in our view, gave a fair and complete instruction on the applicable law of Ohio. Therefore, the Court's failure to give the Defendant-Appellant's requested special instruction was not error. Tyree v. New York Central Railroad Company, 382 F.2d 524 (6th Cir. 1967).
 
 
 23
 The remaining objections concern the admission or exclusion of evidence, the introduction of the issue of wanton misconduct, and certain alleged jury misconduct. Rule 43(a), Federal Rules of Civil Procedure, controls the admission and exclusion of evidence in the federal courts, Erie R. Co. v. Lade, 209 F.2d 948 (6th Cir. 1954), and Rule 61 determines whether any error was reversible error. Clearly, under the broad discretion provided by Rule 15(b), to amend the pleadings to conform to the evidence, it was not error to allow the introduction of the issue of wanton misconduct even if that issue was not pleaded. The Ohio cases cited by Defendant-Appellant are inapposite. We find no error in the District Court's rulings on these points and consider the issue of jury misconduct to be completely without merit.
 
 
 24
 Affirmed.
 
 WEICK, Chief Judge (dissenting):
 
 25
 The verdict and judgment in the amount of $111,900.00 ought not to stand because (1) plaintiff was negligent as a matter of law and (2) the trial court erred in submitting the issue of last clear chance to the jury.
 
 Plaintiff's Negligence
 
 26
 Plaintiff was a girl fifteen years and ten months of age. She was a junior in high school. She was a good student getting 'A' and 'B' grades and ranking 20th in a class of 93. There was no claim of any physical or mental impairment. She had lived in Uniopolis all of her life. Her home was located only about 2 1/2 blocks from the grade crossing at which the accident occurred. She was 'quite familiar' with the crossing. She had ridden a bike since she was seven or eight years old. She had ridden her bike over the crossing for three or four years before the accident. She had received traffic safety instruction both at home and in school. She had seen movements on the main track and the spur track which was also known as the elevator track.
 
 
 27
 Cross-arm warning signs were located on both sides of the tracks in plain view for approaching traffic. The signs were equipped with automatic red flasher lights and a bell. On the crossbars were written the words 'Railroad Crossing'. On one sign was written 'Two Tracks' and on another 'Stop on Red Signal'. Plaintiff understood what the signals meant when they started to flash.
 
 
 28
 The switch was located 429 feet south of the crossing. The highway was paved and was straight. It was 20 feet wide but, between the main track and the spur track, the pavement was 29 feet wide. The distance between the innermost rails of the main track and spur track was 18 1/2 to 19 feet. The grain elevator where the cars were to be spotted was located adjacent to the crossing on the northeast side of it where the spur track dead-ends.
 
 
 29
 The view south of the crossing was unobstructed for at least 10 feet east of the crossing. The accident happened on a Sunday afternoon of a clear sunny October day.
 
 
 30
 In the switching operation, three cars, one loaded and two empties, were cut off the main track and 'dropped' into the elevator track. The power units, consisting of three diesel engines, proceeded north on the main track and came to a stop blocking the crossing in order to prevent vehicular traffic from crossing while the cut of cars was being spotted at the grain elevator. The cut of cars proceeded north on the spur track at some distance to the rear of the power units and at about six miles an hour, but the speed of the cut had been reduced by the brakeman to about two miles an hour at the time of the accident. The cars came to a stop about 23 feet 4 inches from the place where the accident took place.
 
 
 31
 Plaintiff and a girl friend, Melanie, had been riding their bikes that afternoon. Plaintiff left Melanie talking with a boy named Jimmie Evans who had been riding a power mower. Plaintiff approached the crossing on her bike. The signal lights were flashing at the time. She testified on direct examination that she did not remember stopping before she entered the crossing. She said 'I don't think I did'. On cross-examination she was asked:
 
 
 32
 'Q. Well now as you came out of that elevator driveway toward the crossing, did you stop before you went onto the crossing? Did you stop your bike?
 
 
 33
 'A. Gee-- I don't really believe I stopped. I may have slowed down.'
 
 
 34
 She rode her bike over the spur track a distance of four or five feet west of it. Her testimony on direct examination was:
 
 
 35
 'Q. Where did you finally come to a stop?
 
 
 36
 'A. Well, I was off the roadway, oh a few feet in front of the elevator track. I-- maybe four or five feet after I crossed over the track.'
 
 
 37
 She was not off the roadway but on the extended width of the road between the tracks.
 
 On cross-examination she testified:
 
 38
 'Q. So then you went up onto the crossing and stopped your bicycle someplace-- between the tracks, was it?
 
 
 39
 'A. Between the elevator track and the main track, yes.'
 
 
 40
 She further testified that she was closer to the elevator track than to the main track, but she believed she was clear of the elevator track.
 
 
 41
 She further testified that she remained stopped for thirty seconds or a minute before the accident happened or maybe longer, but she did not think it was any less than thirty seconds.
 
 
 42
 At the time she stopped, she said the train on the main track was about in the middle of the road and had not come to a stop.
 
 
 43
 At no time prior to her stopping, or after she stopped, did she look south down the spur track where she could have seen the approaching cars proceeding slowly in plain view. She testified that when the train had stopped she was also stopped and was straddling her bike for about a minute when she heard a shout or yell which she thought was from the cab of the train. She turned her head that way (north) and was then hit.
 
 On cross-examination she testified:
 
 44
 'Q. All right. Did you look in either direction along the elevator track before you went on it?
 
 
 45
 'A. Well, I could have and it's-- it is possible that I really could have looked down there, but I don't remember looking.
 
 
 46
 'Q. You not only could have, you should have, isn't that correct?
 
 
 47
 'A. I should have, yes.'
 
 
 48
 When plaintiff had stopped her bike between the tracks, her girl friend, Melanie, followed her to the edge of the crossing and was in the best position to see what happened.
 
 
 49
 Melanie testified that there was sufficient room between the two sets of tracks for plaintiff's bike and trains to clear; that plaintiff had stopped and was straddling her bike; that the flashers were operating; that if plaintiff had looked to the south she could have seen the approaching cut of cars.
 
 
 50
 Melanie testified on cross-examination as follows:
 
 
 51
 'Q. Now, while Diane was standing between the tracks facing west did you see her move her head at all before the accident?
 
 
 52
 'A. Yes; Jimmie called to her and she looked over her right shoulder at him and backed up.
 
 
 53
 'Q. How many steps back did she take before the collision occurred?
 
 
 54
 'A. I don't know; I don't. I would say three.
 
 
 55
 'Q. At least several steps?
 
 
 56
 'A. Three, around three, yes.
 
 
 57
 'Q. All right, so the rear half of the bike was out behind her, is that right?
 
 
 58
 'A. That's true.
 
 
 59
 * * * *' §
 
 
 60
 Melanie further testified that if plaintiff had not backed up the cars would have gone past without hitting her. Melanie did not see the cut of cars until they were right on top of plaintiff.
 
 
 61
 Jimmie was following Melanie on his power mower and talking to her at the same time. He testified that he saw the train entering the crossing and a crewman waving at plaintiff.[1] He did not state where the cut of cars were at the time he claimed the crewman waved. It seemed to Jimmie that plaintiff 'might have moved back just a little bit'. In describing how quick the accident happened he said 'It was awful fast. It seemed like she was there and Boom. And then she wasn't.' He further testified 'Well, if she had noticed them (box cars) before she went on the crossing she wouldn't have gone on the crossing' and 'If she would have noticed the box cars she would have moved forward to clear it too.'
 
 
 62
 Jimmie did not see the cut of cars until they were either on the crossing or a car length away.
 
 
 63
 Ohio law requires the traveler upon a public highway to look and listen for the approach of trains before proceeding over a grade crossing, and he must look and listen at a place and in a manner that will make the looking and listening effective. One cannot 'claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen.' Detroit Toledo & Ironton R. Co. v. Rohrs, 114 Ohio St. 493, 500, 151 N.E. 714, 717. We followed this case recently and applied the rule in Allen et al. v. New York Central R. Co., 397 F.2d 257 (6th Cir.2d 1968) in which we affirmed an order of the District Court granting summary judgment in favor of the Railroad. Other pertinent Ohio cases are: North v. Pennsylvania R. Co., 9 Ohio St.2d 169, 224 N.E.2d 757 (1967) (summary judgment); Boles v. Baltimore & Ohio Railroad Co., 168 Ohio St. 551, 156 N.E.2d 735 (1959); Woodworth v. New York Central R. Co., 149 Ohio St. 543, 80 N.E.2d 142 (1948); Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597 (1939); Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538 (1927); Toledo Terminal R. Co. v. Hughes, 115 Ohio St. 562, 154 N.E. 916 (1926); New York, C. & St. L. Railroad Co. v. Kistler, 66 Ohio St. 326, 64 N.E. 130 (1902). Other decisions of our Court are: Newcomb v. Baltimore & Ohio Railroad Co., 352 F.2d 406 (6th Cir. 1965); Anderer v. Baltimore & Ohio R. Co., 300 F.2d 14 (6th Cir. 1962); Carter v. Pennsylvania R. Co., 172 F.2d 521 (6th Cir. 1949); Detroit, Toledo and Ironton R. Co. v. Yeley, 165 F.2d 375 (6th Cir. 1947); Baltimore & Ohio Railroad Co. v. Joseph, 112 F.2d 518 (6th Cir. 1940); cert. den., 312 U.S. 682, 61 S.Ct. 551, 85 L.Ed. 1121, rehearing den. 312 U.S. 714, 61 S.Ct. 710, 85 L.Ed. 1144.
 
 
 64
 In Ohio, a minor is liable for his torts. Wery v. Seff, 136 Ohio St. 307, 25 N.E.2d 692 (1940). A minor may be negligent, contributorily negligent, and also assume the risk of his injury as a matter of law. The rule is stated in Englehardt v. Phillips, 136 Ohio St. 73, 23 N.E.2d 829 (1939) where the Court held that a boy between eleven and twelve years of age, who was a fairly good swimmer and diver, assumed the risk of his injury as a matter of law. Judge Hart in writing the opinion of the Court said:
 
 
 65
 'While children are not chargeable with the same amount of care as persons of mature years, they are required to exercise ordinary care to avoid injury to themselves, such care as applied to them being that care which children of like age, education, experience, and ordinary prudence are accustomed to exercise under the same or similar circumstances. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. v. Grambo, Sr., Adm'r, 103 Ohio St. 471, 134 N.E. 648, 20 A.L.R. 1214; Cleveland Rolling Mill Co. v. Corrigan, 46 Ohio St. 283, 290, 20 N.E. 466, 15 Am.St.Rep., 596, 3 L.R.A. 385. It is true, as claimed by the plaintiff, that contributory negligence is not an issue in this case, but the doctrine of assumed risk is in the case as applied to the plaintiff, considering his age, education and experience. Where the nature and extent of the risk are fully appreciated and voluntarily incurred, there is assumption of risk. Hunn v. Windsor Hotel Co., 119 W.Va. 215, 193 S.E. 57.
 
 
 66
 If one is of mature age, or of sufficient age to know and appreciate the danger that attends his act, he cannot complain of an injury sustained by reason of a risk voluntarily assumed. He cannot go into a place of danger which he appreciates and understands, and recover if he is injured thereby. The conduct of a child 'is to be judged by the standard of behaviour to be expected from a child of like age, intelligence and experience. A child may be so young as to be manifestly incapable of exercising any of those qualities of attention, intelligence and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character. On the other hand, it is obvious that a child who has not yet attained his majority may be as capable as an adult of exercising the qualities necessary to the perception of a risk and the realization of its unreasonable character.' 2 Restatement of Law of Torts, 743.
 
 
 67
 Generally speaking, it may be assumed that a person of whatever age is able to appreciate the obvious risks incident to any sport or activity in which he may be able to engage with intelligence and proficiency and must act accordingly. If a child is able to play baseball capably, he must know that there is danger of being hit with ball or bat; if he is able to engage proficiently in the game of football, he must know that in playing the game there will occur violent physical contacts which may result in injury to him; if he is a proficient swimmer and diver, he must know of the danger of drowning and the danger of harm incidental to the use of diving apparatus. Murphy, an infant v. Steeplechase Amusement Co., Inc., 250 N.Y. 479, 166 N.E. 173. That the plaintiff in the instant case knew of the condition of the tower platform in question is shown by the fact that he testified fully upon that subject. Since the plaintiff in this case was shown to be a proficient swimmer and diver and had had much experience in the use of the swimming pool and its diving apparatus, can it be said that he was so immature that he could not appreciate the insecurity of standing or walking upon or diving from a platform which was obviously slippery when wet, and that a slip or fall from such platform might result in more or less injury to him? We think the record in this case warrants the conclusion that he had the ability to appreciate this risk. See Turner v. City of Moberly, 224 Mo.App. 683, 26 S.W.2d 997; City of Evansville v. Blue, 212 Ind. 130, 8 N.E.2d 224; City of Menard v. Coats, Tex.Civ.App., 60 S.W.2d 831; Swan v. Riverside Bathing Beach Co., 132 Kan. 61, 294 P. 902. * * *'
 
 
 68
 See also: Cleveland C., C. & St. L. Ry. Co. v. Gahan, 1 Ohio Cir.Ct.R.,N.S., 205 (1905); Bailey v. Erie R. Co., 143 F.Supp. 351 (D.C.N.Ohio 1956).
 
 
 69
 The record in this case establishes that plaintiff was a good student and an experienced bicycle rider who was familiar with the crossing, and had passed over it many times. She was not so immature as not to appreciate the danger of driving over the crossing without looking for the approach of trains, and that her failure to look might result in injury to her. It is clear that she did have the ability to appreciate the danger and to avoid it.
 
 Last Clear Chance
 
 70
 The classic case in Ohio on last clear chance is Cincinnati, H. & D. Railroad Co. v. Kassen, 49 Ohio St. 230, 31 N.E. 282, 16 L.R.A. 674 (1892). In that case, a passenger on a train fell off the platform of the car in which he had been riding onto the track and was rendered unconscious. The railroad knew of this and did nothing to rescue him before he was struck and killed by another train. It is obvious that the decedent was in a position of peril from which he could not extricate himself, and there was no question but that the defendant knew it. Although he was negligent in falling off the platform, his negligence had ceased when he was rendered unconscious on the ground and could not help himself. The railroad was negligent when it failed to exercise ordinary care after it became aware of his peril.[2]
 
 
 71
 In Cleveland Ry. Co. v. Masterson, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15 (1932), Judge Jones, who wrote the opinion for the Court, said:
 
 
 72
 '* * * where the plaintiff and defendant both are negligent and the former's negligence places him in a perilous situation from which he cannot escape, the plaintiff may still recover, even though he negligently placed himself in such situation, if the defendant did not exercise ordinary care after discovery of his peril.'
 
 
 73
 The rule is stated in Brock v. Marlatt, Adm'x, 128 Ohio St. 435, 191 N.E. 703 (1934) as follows:
 
 
 74
 'The last clear chance rule has no application to any situation except where the injured party through his own negligence, has placed himself in a position of peril. The doctrine presupposes the antecedent negligence of the plaintiff, and an instruction on such issue is not proper where the negligence of the defendant and contributory negligence of the plaintiff are concurrent. Cleveland Ry. Co. v. Masterson, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15, and Pennsylvania Co. v. Hart, 101 Ohio St., 196, 128 N.E. 142, approved and followed.)'
 
 
 75
 On page 439, 191 N.E. on page 705, Judge Matthias, who wrote the opinion for the Court, stated:
 
 
 76
 'The record discloses that the decedent's act in crossing the highway and the approach of the defendant's automobile were concurrent acts, and, if negligent, such negligence continued until they came into collision, which collision some of the evidence indicates occurred at least partly as a result of plaintiff's decedent suddenly reversing his course into the path of the approaching automobile. Without fully reviewing the evidence in the record it is sufficient to say that in so far as the evidence indicated contributory negligence of the plaintiff's decedent it was continuing and concurrent with the acts of the defendant charged to have been negligent. It had not ceased for a sufficient time prior to the accident to enable the defendant, after she knew of the peril of the decedent, to have avoided the accident, and hence the rule of the last clear chance has no application and its injection into the case is prejudicially erroneous. Pennsylvania Co. v. Hart, 101 Ohio St. 196, 128 N.E. 142.'
 
 
 77
 In Peters v. B. & F. Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966), the Court held:
 
 
 78
 ' * * * *v.
 
 
 79
 '6. Where a plaintiff, by his own fault, caused himself to be placed in a perilous situation, he may recover under the rule of the 'last clear chance' notwithstanding his negligence, if the defendant did not, after becoming aware of plaintiff's perilous situation, exercise ordinary care to avoid injuring him. (Paragraph one of the syllabus of Cleveland Ry. Co. v. Masterson, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15, approved and followed.)
 
 
 80
 '7. For the doctrine of 'last clear chance' to be applicable it must be proved that the defendant became aware that plaintiff was in a position of peril at a time and distance when, in the exercise of ordinary care, he could have avoided injuring plaintiff.
 
 
 81
 '8. Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as to deny to a citizen his trial by jury when he has the right. (Paragraph six of the syllabus in J. C. Penney (Penny) Co., Inc. v. Robison, 128 Ohio St. 626, 193 N.E. 401, 100 A.L.R. 705, approved and followed.)'
 
 
 82
 See also: Drown v. Northern Ohio Traction Co., 76 Ohio St. 234, 81 N.E. 326, 10 L.R.A.,N.S., 421 (1907).
 
 
 83
 In the case at bar plaintiff's negligence had not ceased. She was not in a position of peril from which she could not have extricated herself before the accident happened. She was negligent in riding her bike over the spur track without looking south where the approaching cut of cars was slowly approaching and in plain view. She was negligent in remaining between the spur track and the main track for a period of from thirty seconds to one minute before the accident happened without looking down the spur track. Had she looked, she could easily have averted the accident either by not moving backward or by taking a few steps forward to a place of safety in the 18 1/2 foot strip between the spur and main tracks. The cut of cars which struck her was travelling at only two miles an hour at the time of the accident. A person could walk faster than the cars were moving. In such a situation it is unprecedented to claim the benefit of the salutary doctrine of last clear chance.
 
 
 84
 Jimmie Evans testified that a crewman waved to plaintiff as the power units were proceeding across the highway. He did not testify as to the distance of the cut of cars from the crossing at the time he claimed the engineer waved. The fact is he never looked and did not know.
 
 
 85
 A state highway patrolman also related a conversation he claimed to have had with the engineer at the scene of the accident, who was alleged to have told him that he waved and shouted a warning to plaintiff either as the train was approaching the crossing or after it had already stopped and was blocking the crossing. This conversation was not in the patrolman's written report or in the engineer's written statement and the patrolman was necessarily testifying from memory, which probably accounts for his vagueness in attempting to remember what was said six years ago. The conversation does not enlighten us as to the distance of the cut of cars from the crossing at the time.
 
 
 86
 Plaintiff argues from this testimony that the cut of cars could have been stopped by the brakeman in time to have avoided the accident if the engineer had given appropriate signals. The brakeman who was riding on the cut of cars never saw the plaintiff on the crossing. The engineer was not on the cut of cars but was on one of the power units on the main track. He testified that after the power units came to a stop he looked south down the elevator tracks and observed the cut of cars approaching, but at that time no one was within the crossing and it was clear. He later looked down a second time and saw the cut of cars 'practically right on top of her'. He yelled and waved to her and saw her turn to the right and back up and the cars then struck her.
 
 
 87
 It is claimed that instead of shouting and waving the engineer should have blown the whistle on the train to signal the brakeman on the cut of cars that someone was on the elevator tracks so that the brakeman could apply the brakes and stop the cars. But there was no time to do this as the cut of cars was right on top of plaintiff at the time. Time for reaction would have to be allowed both engineer and brakeman who were on different tracks and, even if the signal had been given by the engineer, the brakeman could have done nothing more than he was doing. He had already applied the brakes so as to stop the cars for spotting at the elevator which was adjacent to the crossing. He brought the cars to a complete stop within about 23 feet 4 inches of the place where the accident occurred. Travelling at a speed of two miles an hour the cars could not have been stopped in less than from one and one-half to three car lengths. Plaintiff offered no proof as to the time when defendant became aware of plaintiff's position of peril in relation to the distance of the cars from the point where the accident took place. This is all important in invoking the doctrine of last clear chance. Peters v. B. F. Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966), supra.
 
 
 88
 In ruling on the motion for a directed verdict, and considering the testimony in the most favorable light to the plaintiff, the District Judge said:
 
 
 89
 'The evidence as to time is very conflicting, but again if we take that in the lighe that is most favorable to the plaintiff and make various computations in regard to the physical facts that are undisputed in the evidence, there was a minimum of time-- in excess of thirty seconds-- that the plaintiff was in a position of discovered peril. Now thirty seconds is in some view a very short time; in other places it is a very long time. An ordinary person can cover a lot of ground in thirty seconds if his mind is on it. A person using reasonable care and prudence, if faced with a dangerous situation, can do perhaps a great deal more than that. There were a number of things, I believe, that could have been done in that interval of time on the part of the Defendant to have avoided the accident and they were not done.'
 
 
 90
 The record does not show that the engineer and brakeman had even thirty seconds but, assuming that they had, it was indeed a very short time for the engineer to have blown the whistle and for the brakeman to have acted and to have stopped the moving cut of cars before plaintiff was struck. As I have pointed out, the brakeman had already applied the brakes and did bring the cars to a stop within 23 feet 4 inches of the place where the accident occurred. He could have done no more than that.
 
 
 91
 On the other hand, it should be observed that the plaintiff had the same amount of time as did the engineer and brakeman to have averted the injury to herself and could have done so much easier either by not backing up or at least by taking a few steps forward in the space between the tracks.
 
 
 92
 The District Judge was correct in ruling out the issue of wanton misconduct which was injected in the case by plaintiff. There is great difficulty in even finding negligence on the part of defendant much less wanton misconduct which would deprive the defendant of the defense of contributory negligence. Universal Concrete Pipe Co. v. Bassett, 130 Ohio St. 567, 200 N.E. 843, 119 A.L.R. 646 (1936).
 
 
 93
 Sympathy for plaintiff's severe injury weighs heavily in her favor but cannot be considered in determining liability. Under Ohio law, plaintiff cannot recover. She ought not to recover in the federal court.
 
 
 94
 I would reverse the judgment.
 
 
 
 [1]
 Defendant-Appellant presented the issue of the minor Plaintiff's contributory negligence in three different questions: the first question concerned the District Court's failure to grant a directed verdict, the second the Court's failure to grant a judgment notwithstanding the verdict, and the third concerned the Court's failure to charge the jury that the minor Plaintiff was guilty of contributory negligence as a matter of law. We consider all three questions as presenting essentially the same argument
 
 
 [2]
 The federal standard is applied in the Fourth, Fifth, Ninth, and Tenth Circuits: Davis Frozen Foods, Inc. v. Norfolk Southern Ry. Co., 204 F.2d 839 (4th Cir. 1953); Planters Manufacturing Company v. Protection Mutual Insurance Company, 380 F.2d 869 (5th Cir. 1967); Smith v. Buck, 245 F.2d 348 (9th Cir. 1957); Basham v. City Bus Company, 219 F.2d 547, 52 A.L.R.2d 582 (10th Cir. 1955). The Sixth and Eighth Circuits apply the state standard: Lovas v. General Motors Corp., 212 F.2d 805 (6th Cir. 1954); Continental Can Company v. Horton, 250 F.2d 637 (8th Cir. 1957). The positions of the Second and Third Circuits is in some doubt: Compare Reynolds v. Pegler, 223 F.2d 429, 434 (2d Cir. 1955); and Woods v. National Life and Accident Insurance Company, 347 F.2d 760 (3d Cir. 1965); with Presser Royalty Company v. Chase Manhattan Bank, 272 F.2d 838 (2d Cir. 1959); and McDermott v. John Hancock Mutual Life Insurance Co., 255 F.2d 562 (3d Cir. 1958). See generally 5 Moore, Federal Practice Par. 50.06 (1967)
 
 
 [3]
 Applying the state standard has not been outcome determinative in most of our decisions. In some cases, when we have considered the problem a re- examination of our position was made unnecessary because the state standard and federal standard were the same. Price v. Firestone Tire and Rubber Company, 321 F.2d 725 (6th Cir. 1963); Gilreath v. Southern Railway Company, 323 F.2d 158 (6th Cir. 1963); Dean v. Southern Railway Company, 327 F.2d 757 (6th Cir. 1964). In others the issue was not presented because the question was whether the plaintiff had proved the necessary elements of his case. See e.g. Hall v. Marshall, 394 F.2d 790 (6th Cir. 1968). Compare Safeway Stores v. Fannan, 308 F.2d 94, 97 (9th Cir. 1962). Only in Trivette v. New York Life Insurance Co., 283 F.2d 441 (6th Cir. 1960), might application of the federal standard have made a difference in the result reached
 
 
 [4]
 Lavender v. Kurn was an F.E.L.A. case, but we have cited F.E.L.A. cases in the past, e.g. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949), as stating the federal rule for sufficiency of the evidence. See Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255 (6th Cir. 1961). The controversy over whether F.E.L.A. cases state the federal standard for sufficiency of the evidence in common law cases was aptly resolved by the Fifth Circuit in Planters Manufacturing Company v. Protection Mutual Insurance Company, 380 F.2d 869 (5th Cir. 1967)
 
 
 [5]
 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842)
 
 
 [6]
 The brakeman testified that he could have stopped the cut in one and a half car lengths. Defendant-Appellant attempted to get into evidence the engineer's opinion that the cut could not have been stopped. We think that the District Court properly sustained the Plaintiffs' objection to the question. Even if such evidence was admissible, however, the engineer answered the question, and since the answer was before the jury, the District Court's mere sustaining of the objection would have been harmless error. Rule 61, Federal Rules of Civil Procedure
 
 
 [1]
 Jimmie made no mention of the crewmen waving in a statement he gave to his Legal Officer in the Navy which, except for formal parts, was in his own handwriting. His testimony at the trial conflicted materially with his statement
 
 
 [2]
 Later decisions of the Supreme Court of Ohio have limited the doctrine of last clear chance to situations where the defendant actually knew and not merely should have known that plaintiff was in a position of peril. Cleveland Ry. Co. v. Masterson, 126 Ohio St. 42, 183 N.E. 873, 92 A.L.R. 15 (1932); Pennsylvania Co. v. Hart, 101 Ohio St. 196, 128 N.E. 142; Peters v. B. F. Transfer Co., 7 Ohio St.2d 143, 219 N.E.2d 27 (1966)